## PARKER, DEPUTY COMMISSIONER, UNITED STATES EMPLOYEES' COMPENSATION COMMISSION, *v.* MOTOR BOAT SALES, INC.

No. 46. Argued November 19, 1941.—Decided December 8, 1941.

*Assistant Attorney General Shea,* with whom *Assistant Solicitor General Fahy* and *Mr. Melvin H. Siegel* were on the brief, for petitioner.

*Mr. Minitree Jones Fulton* for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

August 18, 1938, George Armistead was drowned when a motor boat in which he was riding capsized on the James

River off Richmond, Virginia. The boat was navigated by one Johnnie Cooper. Both Armistead and Cooper were employees of the respondent, Motor Boat Sales, Incorporated, which sold small boats, maritime supplies, and outboard motors. The object of the ill-fated boat trip was to test one of the respondent's outboard motors, which it desired to sell, and later did sell, to the owner of the boat. The petitioner, Deputy Commissioner of the United States Employees' Compensation Commission, under authority of § 19 of the Longshoremen's and Harbor Workers' Act, 44 Stat. 1424, after complaint, investigation, and hearings, ordered the respondent to pay compensation to Armistead's widow for the benefit of herself and three minor children. Among the findings on which the Deputy based his order were these: that Armistead's death by drowning, "arose out of and in the course of his employment; that his death occurred upon navigable waters; and that at the time of his death he was engaged in maritime employment." Section 21 (b) of the Act provides that if a Deputy Commissioner's award is not made in accordance with law, Federal District Courts may enjoin enforcement of it upon petition of any party in interest. In proceedings initiated by the respondent under this section, the District Court sustained the award, dismissing the bill on the ground that the findings of fact were supported by evidence and were therefore conclusive, and that the Commissioner's conclusions and award were in accordance with law. The Circuit Court of Appeals reversed, advancing two reasons for its conclusion: (1) Armistead was not acting in the course of his employment at the time of the accident; and (2) even if he had been, recovery was barred by § 3 (a) of the Act making compensation payable "only if . . . recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

(1) The Circuit Court's conclusion that Armistead was not acting in the course of his employment rests upon a

revaluation of the evidence before the Deputy Commissioner. It is true that the respondent's president testified that "George was cautioned never to go into a boat or have anything to do with a boat or motor," but this rule was laid down "prior to November 1937" and the accident occurred in August, 1938. Against whatever inferences to be drawn from testimony regarding this general and rather remotely announced rule, are the inferences to be drawn from testimony that on the morning of the accident Armistead was sent to the river with specific instructions to help Cooper in placing the outboard motors on the boat; that there were no specific instructions as to whether or not Armistead was to stay out of the boat; that either Armistead or Cooper was told that Armistead was "to go and help" Cooper; that Cooper, the superior of the two employees, at least acquiesced in Armistead's remaining in the boat to "keep a lookout" for hidden objects in the muddy water; that Cooper regarded Armistead's acting as lookout as "helpful"; that employees of the respondent would sometimes make trips in boats for testing purposes, in furtherance of respondent's business; and that in one such instance an employee had taken a boat on a trip of at least fifty miles in respondent's behalf. Granting that more than one possible conclusion could have been reached upon the evidence, we think it was clearly sufficient to support the Deputy Commissioner's finding that Armistead was acting in the course of his employment. The Circuit Court of Appeals should therefore have accepted it as final. *Voehl* v. *Indemnity Ins. Co.*, 288 U. S. 162.

(2) The Circuit Court was of the opinion that even if Armistead had acted in the course of his employment, the Longshoremen's and Harbor Workers' Act would not apply because his employment was "so local in character" that Virginia could validly have included it under a state workmen's compensation Act. 116 F. 2d 789. This proposition cannot be rested on the ground that Armistead,

hired primarily as a janitor and porter, was predominantly a non-maritime employee. For, habitual performance of other and different duties on land cannot alter the fact that at the time of the accident he was riding in a boat on a navigable river, and it is in connection with that clearly maritime activity[1] that the award was here made. Cf. *Northern Coal Co.* v. *Strand,* 278 U. S. 142, 144; *Liability Assurance Co.* v. *Cook,* 281 U. S. 233, 236. Moreover, § 2 (4) of the Act expressly provides for its application to "employees [who] are employed . . . in whole or *in part* upon the navigable waters of the United States."

If the conclusion of the Circuit Court can be supported at all, it must be on the basis that the employment, even though maritime and therefore within an area in which Congress *could* have established exclusive federal jurisdiction, is nevertheless subject to state regulation until Congress has exercised its paramount power. Cf. *Liability Assurance Co.* v. *Cook, supra,* 237. Congress having expressly kept out of the area in which "recovery . . . may . . . validly be provided by State law," the argument may be made that Virginia would have been unhampered in providing for compensation here.

The decision of this Court in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, however, severs a link in this chain of reasoning. For under the holding of that case, even in the absence of any Congressional action,[2] federal jurisdic-

---

[1] Cf. *The Moses Taylor,* 4 Wall. 411, 427; *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 58–63; *Industrial Comm'n* v. *Nordenholt Co.,* 259 U. S. 263, 272–273; *Smith & Son* v. *Taylor,* 276 U. S. 179, 181; *London Guarantee Co.* v. *Industrial Comm'n,* 279 U. S. 109, 123, 125.

[2] While reference was made in the majority opinion of the *Jensen* case to § 9 of the Judiciary Act of 1789, 1 Stat. 76, 77, there is no implication that the Court regarded this statute as an "occupation" by Congress of a field otherwise of concurrent jurisdiction. And in *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 157–158, the Court explained the *Jensen* case entirely in terms of the exclusive federal jurisdiction created by Article III, § 2, and Article I, § 8, of the Con-

tion is exclusive and state action forbidden in an area which, although of shadowy limits,[3] doubtless embraces the case before us. The basis of the decision, that Article III, § 2, of the Constitution, extending the judicial power of the United States "to all cases of admiralty and maritime jurisdiction," is tantamount to a command that no state may interfere with the harmony and uniformity of admiralty law, and that on the facts of that case recovery under a state statute would work such an interference, was rejected by four dissenting members of the Court. And when the doctrine of the *Jensen* case was reaffirmed in *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, and *Washington* v. *Dawson & Co.,* 264 U. S. 219, sharp disagreement was again expressed in dissenting opinions. We have not been called upon here, however, to reconsider the constitutional principles announced in those cases, and we are convinced that such a reconsideration is not necessary for disposition of the case before us.

What we are called upon to decide is not of constitutional magnitude. For, regardless of whether or not the limitation on the power of states set out in the *Jensen* case is to be accepted, it is not doubted that Congress could constitutionally have provided for recovery under a federal statute in this kind of situation. The question is whether Congress has so provided in this statute. The proviso of § 3 (a) aside, there would be no difficulty whatever in concluding it has. For the Act expressly includes within its ambit accidents "arising out of and in the course of employment" in the case of employees engaged "in

stitution. Reference to § 9 of the Judiciary Act of 1789 was made only for the purpose of pointing out that a clause embodied in it, which saved certain common law remedies, "had no application."

[3] Cf.: "In view of these constitutional provisions and the federal act it would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by state legislation. That this may be done to some extent cannot be denied." *Southern Pacific Co.* v. *Jensen, supra,* 216.

maritime employment, in whole or in part, upon the navigable waters of the United States," and Armistead's death was the result of such an accident. While the proviso of § 3 (a) appears to be a subtraction from the scope of the Act thus outlined by Congress, we believe that, properly interpreted, it is not a large enough subtraction to place this case outside the coverage which Congress intended to provide.

In the report of the Senate Committee on the Judiciary accompanying the bill which was enacted as the Longshoremen's and Harbor Workers' Compensation Act, S. R. 973, 69th Cong., 1st Sess., 16, this avowal of Congressional purpose appears:

"If longshoremen could avail themselves of the benefits of State compensation laws, there would be no occasion for this legislation; but, unfortunately, they are excluded from these laws by reason of the character of their employment; and they are not only excluded but the Supreme Court has more than once held that Federal legislation can not, constitutionally, be enacted that will apply State laws to this occupation. (Southern Pacific Co. v. Jensen, 244 U. S. 205; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149; Washington v. Dawson & Co., 264 U. S. 219.)

"It thus appears that there is no way of giving to these hard-working men, engaged in a somewhat hazardous employment, the justice involved in the modern principle of compensation without enacting a uniform compensation statute."

There can be no doubt that the purpose of the Act was to provide for federal compensation in the area which the specific decisions referred to placed beyond the reach of the states. The proviso permitting recovery only where compensation "may not validly be provided by State law" cannot be read in a manner that would defeat this

250

purpose. An interpretation which would enlarge or contract the effect of the proviso in accordance with whether this Court rejected or reaffirmed the constitutional basis of the *Jensen* and its companion cases cannot be acceptable. The result of such an interpretation would be to subject the scope of protection that Congress wished to provide, to uncertainties that Congress wished to avoid.

The main impetus for the Longshoremen's and Harbor Workers' Compensation Act was the need to correct a gap made plain by decisions of this Court. We believe that there is only one interpretation of the proviso in § 3 (a) which would accord with the aim of Congress; the field in which a state may not validly provide for compensation must be taken, for the purposes of the Act, as the same field which the *Jensen* line of decision excluded from state compensation laws. Without affirming or rejecting the *constitutional* implications of those cases, we accept them as the measure by which Congress intended to mark the scope of the Act they brought into existence.

(3) The respondent further contends that the award was void under § 5 of the Act. This section, set out in full in the margin below,[4] states that "an injured em-

---

[4] "Sec. 5. The liability of an employer prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this Act, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this Act, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

ployee, or his legal repesentative in case death results from the injury, may elect to claim compensation under this Act . . ." The record does not indicate that a "legal representative" of Armistead was ever appointed. Here the claim was filed by his widow. Since the respondent did not contest the widow's capacity to file a claim, either before the Deputy Commissioner or in the District Court, the objection, even if otherwise meritorious, was made too late. Cf. *McCandless* v. *Furlaud*, 293 U. S. 67. We may nevertheless point out that the widow's asserted incapacity to sue in her own name can be derived only inferentially from the terms of § 5, and that other sections of the Act are not in harmony with this inference. Section 12 provides that notice of death may be given "by any person claiming to be entitled to compensation for such death or by a person on his behalf." Section 19 (a) provides that "Subject to the provisions of section 13 a claim for compensation may be filed . . . in accordance with regulations prescribed by the commission," and there is nothing in § 13 which makes filing by a "personal representative" mandatory. Moreover, administrative practice apparently countenances the filing of claims by widows, since the Commission has prescribed printed forms bearing the caption: "Claim for Compensation in Death Case by Widow and for Children under the Age of Eighteen." Form US–262.

We reverse the judgment of the Circuit Court of Appeals and affirm that of the District Court.

*Reversed.*