**LACOMASTIC CORPORATION et al. v. PARKER, Deputy Commissioner United States Employees' Compensation Commission, et al.**

No. 2617.

District Court, D. Maryland.

Feb. 9, 1944.

Semmes, Bowen & Semmes and William D. Macmillan, all of Baltimore, Md., for complainants employer and insurance carrier.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., and Ward E. Boote, Chief Counsel, and Herbert P. Miller, Associate Counsel, United States Employees' Compensation Commission, both of Washington, D. C., for Deputy Commissioner.

Emory Beeuwkes, Skeen & Oppenheimer and John H. Skeen, all of Baltimore, Md., for claimant.

COLEMAN, District Judge.

This case is brought by the Lacomastic Corporation and its insurance carrier, The Ocean Accident & Guarantee Corporation, Ltd., to review and set aside an award of the Deputy Commissioner of the United States Employees' Compensation Commission, appointed pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950 inclusive, in favor of one of the Lacomastic Corporation's employees.

The award, based upon a finding that the employee was totally disabled as the result of the aggravation of a pre-existing, quiescent pulmonary tubercular condition, was for compensation, effective July 22, 1942, at the rate of $25 per week, payable weekly, to continue until there is a change in conditions.

The employer and insurance carrier contend that the claimant's disability, due to a pre-existing disease, was merely contemporaneous and coincidental with his work; that, therefore, it was neither an "accidental injury * * * arising out of and

in the course of employment", or "such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury .* * *", which must be the case in order to recover under the Act. Sec. 2(2), 33 U.S.C.A. § 902(2).

This case is somewhat unusual from a procedural aspect. The claim was filed in Baltimore where claimant was working at the time his disability began. However, following hospitalization in Baltimore, he returned to New York City, his former place of residence, where he has since remained. . Because of this change of residence on the part of claimant; because most of the medical examination and treatment which claimant underwent took place in New York City, and also because material witnesses were more available there than in the Maryland District, the Deputy Commissioner, for the Maryland District, transferred the case, with the approval of the Commission, to the Deputy Commissioner for the Second Compensation District resident in New York City, for the purpose of taking testimony. As a result, the entire testimony in the case,— that of only four witnesses besides claimant himself,—was taken in New York City before the Deputy Commissioner there. He then transferred the record back to the Deputy Commissioner in Baltimore, who made his findings of fact and award, now under review.

It will thus be seen that the procedure followed has resulted in the decision, which we are asked to review, being rendered by a person who never heard the testimony of any witnesses. Since, in the present proceeding to review, this court is restricted to an examination of the record as it comes to it and can hear no testimony, and since of course the same is true with respect to the appellate court in the event of an appeal, the result is, that throughout the entire proceeding, there will be no decision by anyone who has heard the witnesses or had an opportunity in person to appraise them and their testimony.

The question thus arises: Was the administrative procedure followed by the Deputy Commissioners necessary or permissible under the provisions of the Longshoremen's and Harbor Workers' Compensation Act?

Secs. 12(a) and 13(a) provide respectively that notice of injury shall be given, and claims shall be filed with the Deputy Commissioner in the Compensation District in which the injury or death occurred. Notice of his injury as having occurred in the Maryland District was duly given to, and claim was duly filed with, the Maryland Deputy Commissioner by claimant. 33 U.S.C.A. §§ 912(a), 913(a). Sec. 19(a) provides that "Subject to the provisions of section 913 of this chapter a claim for compensation may be filed with the deputy commissioner in accordance with regulations prescribed by the commission at any time after the first seven days of disability following an injury, or at any time after death, and the deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim." 33 U.S.C.A. § 919(a). Sec. 19(g) provides that "At any time after a claim has been filed with him, the deputy commissioner may, with the approval of the Commission, transfer such case to any other deputy commissioner for the purpose of making investigation, taking testimony, making physical examinations or taking such other necessary action therein as may be directed." 33 U.S.C.A. § 919(g).

It was in direct reliance upon this latter provision that the Deputy Commissioner of this District referred the case to the New York Deputy Commissioner. Finally, it is to be noted that by Sec. 21(b) of the Act, "A compensation order may be suspended or set aside, in whole or in part, through injunction proceedings, mandatory or otherwise, brought by any party in interest against the deputy commissioner making the order, and instituted in the Federal district court for the judicial district in which the injury occurred * * *." 33 U.S.C.A. § 921(b). This is the only method of review authorized by the Act. It is exclusive. To the extent that matters of procedure are provided for in the Act, such supplants the Federal Rules of Civil Procedure by express provision in those Rules. Rule 81(a) (6), 28 U.S.C.A. following section 723c.

It is clear from the aforegoing statutory provisions that (1) the present claimant filed his claim in the District prescribed by the statute, namely, the Maryland District; and (2) the present proceedings for a review of the award have been properly instituted by the employer and the insurance carrier in the same District, pursuant to the statute. There was no application made to the Maryland Deputy

Commissioner to take any testimony because no witnesses, believed to be material at the time of the hearing, were resident in the Maryland District but all such were resident in the New York District. But the Act vests in the Maryland Commissioner, and presumably in him only, "full power and authority to hear and determine all questions" in respect to claims properly filed in his District, as was the present one. Therefore, the Maryland Deputy Commissioner conformed literally to the statute in reentering the case and rendering his decision and award therein. In short, we find that both Commissioners conformed literally to the procedural provisions of the Act. Therefore, the only possible remaining questions, from a procedural standpoint, are whether (1) under the circumstances of the present case, such strict conformity with the statute as respects the rendition of the decision and award, was indispensable; and (2) if it was, whether such violates any of the requirements of due process with respect to the kind of disposition of the case which the parties were entitled to have, in an administrative proceeding of this sort.

Section 19(g) as originally enacted in 1927, Chap. 509, Sec. 19(g), 44 Stat. 1436, read as follows: "After a compensation order has [been] issued in any case the deputy commissioner may transfer such case to any other deputy commissioner for the purpose of taking testimony or making physical examinations." By amendment of June 25th, 1938, this section was changed to read as it now stands, and previously quoted. The purpose of this change was to afford greater flexibility in the transfer of a case from one Deputy Commissioner to another, and specifically to permit such transfer to be made before a compensation order has been issued, which was not permissible under this section as originally enacted, the result of which was frequently to require the taking of deposition testimony at considerable distance from the place where the claim had to be adjudicated but prior thereto, thus incurring added expense and delay.

It is to be assumed that a case such as the present one was not actually in contemplation by Congress in enacting the amendment. However, it is clearly broad enough to cover the present situation and we do not believe that the procedure designated by the statute, and strictly followed by both Deputy Commissioners, violates any

established principles or rights incident to hearings before administrative agencies. Neither claimant, his employer nor his insurance carrier has seriously urged upon the court that the procedure followed was improper and obviously, it is not to be assumed that claimant would do so. However, the point was discussed by counsel at the hearing and the court, largely upon its own initiative, has felt it necessary to examine fully into the question and to render a decision thereon before considering the case on its merits.

The fact that there is no decision or award in this case by any person or tribunal that has ever heard the witnesses or had an opportunity to appraise them and their testimony first hand, is not, we think, a violation of any substantive right of any of the parties. It is true that in judicial as distinguished from administrative proceedings, there is an inherent right on the part of litigants to have a decision rendered by the judge who presides at the trial and hears the testimony. See, for example, United States v. Nugent, 6 Cir., 100 F.2d 215, certiorari denied Fidelity & Columbia Trust Co. v. United States, 306 U.S. 648, 59 S.Ct. 591, 83 L.Ed. 1046. However, this does not mean that it is mandatory in all cases for the trial judge to hear testimony, as evidenced by the long accepted practice, in certain equity causes, of referring the taking of the entire testimony to a master. Similarly, the judge may have a proceeding in which all of the testimony is taken by deposition and thus again, he never hears the witnesses upon whose testimony he bases his findings.

Therefore, while it is true that the circumstances in the present case are not precisely the same as in a case where testimony is taken before a master or by deposition exclusively, we do not think that insofar as procedural regularity or validity is concerned, there is any distinction on principle, especially since procedural due process in administrative law is generally recognized to be a matter of greater flexibility than where we are dealing with strictly judicial tribunals. For example, the administrative agency may, to a greater degree, invoke the aid of assistants, even though the statute creating the administrative agency and defining its powers and duties may not expressly say so. See Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Id., 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129, rehearing denied 304

142

U.S. 23, 58 S.Ct. 999, 82 L.Ed. 1129; National Labor Relations Board v. Biles Coleman Lumber Co., 9 Cir., 98 F.2d 16. Also, it is well settled that since assistants or examiners may take evidence, hear argument and make findings of fact and conclusions of law, the fact that the member or members of the administrative agency who ultimately decide the case have not heard the witnesses or argument or prepared the findings of fact and conclusions of law does not constitute a denial of due process. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Morgan v. United States, supra; Quon Quon Poy v. Johnson, 273 U.S. 352, 47 S.Ct. 346, 71 L.Ed. 680. See also, Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; Cupples Co. Mfrs. v. National Labor . Relations Board, 8 Cir., 103 F.2d 953; National Labor Relations Board v. Biles Coleman Lumber Co., supra; Eastland Co. v. Federal Communications Commission, 67 App.D.C. 316, 92 F. 2d 467.

 We, therefore, now turn to a determination of the basic question presented to us, namely, whether the award which the Deputy Commissioner has made is in accordance with law. If it is not, the Longshoremen's and Harbor Workers' Compensation Act expressly provides, 33 U.S.C.A. § 921(b), that it may be suspended or set aside in whole or in part. This means that the award of the Deputy Commissioner may be altered if, but only if, there was no substantial evidence before him to support his findings. In other words, it is not the weight of the evidence that must control us, nor whether the court necessarily agrees with the Deputy Commissioner's conclusion, but merely whether there is evidence present in the record in this case as it comes from him, sufficient to justify his findings. There can be no trial de novo of the facts in the absence—as is true here—of a jurisdictional question. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Parker v. Motor Boat Sales, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184. Nor is there any provision in the Act giving this court power to remand the case in order that additional testimony may be presented.

The Deputy Commissioner made rather extensive findings of fact, which may be stated in a somewhat abbreviated form as follows:

Claimant, the employee, age 32, was employed by the Lacomastic Corporation on June 17th, 1942, as an asbestos sprayer's helper aboard vessels in Baltimore harbor. This work consisted of insulating ammunition magazines aboard the vessels by spraying a layer of moistened asbestos upon the walls and ceilings of these compartments, under pressure. The operation was performed by the use of a spray-gun similar to a paint-gun, from one,—the lower,—nozzle of which was ejected water, and from the upper nozzle, dry asbestos, the mixture being thus applied to the walls and ceilings of the ammunition compartments.

In these ammunition compartments there were no port holes or other openings except small hatches used for the purpose of ingress and egress. The spraying operation created a constant dense fog or mist. It was claimant's duty to follow behind the man operating the sprayer and with a trowel to pat down and smooth the applied material into place. In addition to being dense, the atmosphere was hot and close. Claimant and his co-workers usually wore only shorts and sweated profusely. They often worked long hours because of the emergency nature of their job. Claimant averaged 11 to 14 hours daily. He was supplied with a mask which covered the nose and mouth, with a respiratory device, and it was necessary to remove the mask from time to time for the purpose of cleaning it. There is conflicting evidence as to whether claimant worked at all without his mask in place. He claims that he did for some two weeks, although this is not supported by the testimony of any superior or co-worker.

On July 12th, 1942, while working aboard ship, as just described, which he had been doing since June 17th, claimant began to cough and discharge blood from the mouth. Thereupon, he was ordered to the company's physician, who advised an X-ray. However, he returned to work without having been X-rayed, and continued working until July 21st, when he had another hemorrhage and was sent to a Baltimore hospital for an X-ray of his chest, and then he returned to New York City, where he was examined and again X-rayed by the insurance carrier's physician. These X-rays showed a tuberculous lesion of more than 1½ inches in diameter over the right lower lobe of the lung, and an infiltrated area in the upper right lobe. During this period of less than two months, claimant

lost 30 pounds in weight, and on August 15th, 1942, he was hospitalized, first in the Queens General Hospital and later in the Metropolitan Hospital, where he has ever since remained as a patient. On September 1st, 1942, his sputum tests were positive for tuberculosis.

Prior to working for the Lacomastic Corporation in Baltimore Harbor, claimant, commencing February 25th, 1942, had done the same sort of work for the same employer for approximately five weeks in New York harbor and two weeks in Hoboken. Also, he worked in the same capacity for approximately two weeks in Baltimore, returned to Hoboken, engaged in similar work for several weeks, and then returned to Baltimore for what has been described as his second tour of duty commencing on June 17th, 1942, in the course of which he began to have hemorrhages, became incapacitated, and was hospitalized, as has already been described. Prior to February, 1942, claimant had had other jobs entirely different in character.

On these facts, the Deputy Commissioner found as follows: "That the employee, at the time of beginning work for this employer, had a pre-existing and latent tuberculosis not known to himself, and which had not theretofore been giving symptoms or was in any way disabling; that the conditions under which work was performed for the employer as above found, including much overtime work performed under emergency condition, materially aggravated the pre-existing, quiescent tuberculosis, causing same to be lighted up into an active condition and producing total disability effective July 22nd, 1942; that the present disability is therefore in causal relationship with the employment." Accordingly, the Deputy Commissioner awarded to the claimant, on the basis of total disability, accrued compensation from July 22nd, 1942, for 33 weeks, at $25 a week, or $825, and further compensation at the same rate, payable weekly, to continue until a change in claimant's condition, the employer and carrier to "furnish to the claimant such medical treatment and hospital service as the nature of the injury or the process of recovery may require."

We find no error in the Deputy Commissioner's findings of fact as disclosed by the record in this case. Besides that of claimant, the testimony of only four witnesses was taken. One of these was claimant's foreman, and another was a co-employee. The remaining two witnesses were physicians who saw and examined claimant while hospitalized in New York.

Both of these physicians had had long experience in pulmonary cases. One, Dr. Schochet, testifying on behalf of claimant, examined him while a patient in the Metropolitan Hospital, Welfare Island, New York. The other, Dr. Mayer, testifying for the employer and insurance carrier, had likewise examined claimant while hospitalized. The first mentioned physician's diagnosis was as follows: "That the patient did not contact pulmonary tuberculosis as a result of the work he was doing, nor did he develop asbestosis. However, the long hours of arduous work in a dusty atmosphere over a period of six months working seven days a week with little rest, certainly was enough of an exertion to aggravate whatever small pulmonary lesion he did have in his lungs prior to his employment." He was asked: "How certain do you feel that you can be that he had a predisposition or pre-existing tuberculosis? Would the X-rays tell you in that regard?" And he replied: "No, he certainly did not develop tuberculosis by spraying asbestos dust. He was not spraying tuburcular bacilli. He must have had that disease. Or, for that matter, he may have picked it up from somebody else in and around his employment. We don't know that."

The other physician's testimony as a whole was somewhat less positive and less definite in character, and his diagnosis is best understood by quoting the following questions and his answers thereto:

"Question: Now, if this claimant was exposed to the following physical hardships, would it be more likely for his pre-existing pulmonary lesion to flare up, if he had the following physical hardships, from the job:

"Working 80 to 90 hours a week; working in dampness and in very warm and close quarters; loss of 30 pounds over a period of six or seven months; sweating profusely and much coughing because of the dust whenever working.

"Could those types of physical hardship aggravate a pre-existing pulmonary lesion?

"Answer: That would all tend to break down his tuberculosis.

"Question: And that would aggravate and accelerate the condition?

"Answer: Yes."

As already explained, the function of this court in reviewing the action of the Deputy Commissioner is a narrow one. It is limited exclusively to a determination as to whether there is substantial evidence to support the Deputy Commissioner's findings, and, therefore, it is not the weight of the evidence that must control us, nor whether we necessarily agree with the Deputy Commissioner's conclusion, but simply whether there was evidence before him sufficient to justify his findings. In the present case the Deputy Commissioner's conclusion is directly and unequivocably supported by the testimony of one of the two doctors, and indeed, by the other doctor also, although his testimony was somewhat less positive. There is no claim that these physicians were not fully competent to pass upon a pulmonary condition, such as that with which claimant was afflicted. Dr. Schochet, testifying for claimant, was a graduate of the New York Medical College and Flower Hospital in 1930; was connected with several other hospitals and sanitoriums and specialized in pulmonary diseases and tuberculosis. The other physician, Dr. Mayer, was a graduate of the College of Physicians and Surgeons in 1913, and has since specialized in diseases of the lungs, being assistant professor of medicine at Cornell University Medical College, attending physician at the New York Hospital and the Memorial Hospital, as well as consulting physician to several other hospitals. In the course of his testimony he stated "that he was the impartial expert consultant to the New York Department of Labor on dusty diseases."

Counsel for the employer and insurance carrier stressed the point that claimant's testimony with respect to his coughing reveals that he did not have the coughing spells which the two doctors use as the basis of their respective opinions on the question of aggravation of claimant's latent tubercular condition. In other words, it is contended that if claimant did, in fact, have spells of aggravated coughing as referred to by the doctors, it would have been the most natural thing for him to have so characterized his coughing, and since neither he nor his co-workers did so, claimant does not bring himself within the conditions and qualifications of the opinions of the two medical witnesses.

Also, counsel for the employer and insurance carrier question the correctness of the Deputy Commissioner's finding that whether the claimant did, or did not, work for a period of about two weeks without a mask (as to which the testimony was conflicting) was not controlling, because, as they allege, if claimant was made to cough at all by the conditions under which he worked, it is natural to assume that the coughing would have more likely occurred when he worked without a mask, if he did, and yet, claimant was not certain as to whether or not failure to wear the mask really produced coughing at the time.

We have given full consideration to these points, but believe, with the Deputy Commissioner, that they are relatively secondary, and that his finding that claimant's work "materially aggravated the pre-existing quiescent tuberculosis", is clearly supported by the testimony of one, if not both, of the physicians, and is also a most natural, reasonable conclusion from the conditions under which claimant was required to work.

It is regrettable that, according to claimant's uncontradicted testimony, his employer failed to give him a physical examination when he was first put on this kind of work. Unless we are prepared to repudiate the testimony of both physicians, which we have no right to do, it is a natural assumption of both lay and professional persons that had such examination been made, claimant's unfortunate latent or incipient tubercular condition might well have been disclosed, and then and there he probably would have been, or should have been refused this type of employment, and his resultant total disability, at least from this particular disease, might have been prevented, or at least postponed, and the present protracted litigation rendered unnecessary.

Even though not required to do so by statute, as is true with respect to the Longshoremen's and Harbor Workers' Compensation Act, failure on the part of industry to require physical examinations of its employees before being accepted for work, at least where they are required to work under entremely trying or unhealthy conditions, such as those under which claimant worked, is regrettably prevalent, as disclosed in cases under this and similar Compensation Acts. Nor would it seem entirely sufficient merely to set this case down as another War casualty, or to say that the conditions incident to doing the particular work could not be made less severe, or that

it would be impractical, if not impossible, to give every employee a thorough physical examination on the chance of disclosing a latent physical disease. Therefore, it is not out of place for this court to add that, in view of the present employer's and insurance carrier's failure to take at least somewhat greater initial safeguards with respect to this employee, even though admittedly not required by law to do so, their rather refined and tenuous objections to the medical findings upon which the Commissioner based his award, become all the less convincing.

For the reasons given, the award of the Deputy Commissioner must be affirmed.