MAIN SHIP REPAIR CORPORATION, employer and Liberty Mutual Insurance Company, insurance carrier, Plaintiffs-Appellants,

v.

Thomas F. HUGHES, as Deputy Commissioner for the Second Compensation District of the United States Department of Labor, Defendant-Appellee.

No. 63–C–1091.

United States District Court
E. D. New York.

Dec. 17, 1964.

Albert P. Thill, Brooklyn, N. Y., for plaintiffs-appellants.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, by Louis E. Greco, Atty. in Charge, Admiralty and Shipping Section, Dept. of Justice, for defendant-appellee.

ZAVATT, Chief Judge.

This case is before the court upon cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure. The complaint, filed pursuant to 33 U.S.C. § 921, seeks to review and set aside a compensation order of Thomas F. Hughes, Deputy Commissioner, Bureau of Employees' Compensation, United States Department of Labor, dated September 18, 1963, as modified March 26, 1964.[1]

The contested order awarded compensation to one Walter F. Wesolowski (hereinafter the claimant), in the amount of $1,554.00 for a deterioration of his hearing caused by exposure to excessive noise while employed as a welder by Main Ship Repair Corporation aboard the S.S. Kennebec. The complaint alleges that the record does not support the Deputy Commissioner's finding that the plaintiffs are liable for payment of the claimant's entire hearing loss disability as found to exist on January 27, 1962. The plaintiffs contend that the evidence establishes that the claimant suffered a scientifically measured loss of hearing prior to this employment which was in no way related to or caused by his employment with Main Ship Repair Corporation.

Both parties have moved for summary judgment on the ground that there exists no genuine issue of fact. The court must now determine, as a matter of law, if the findings of the Deputy Commissioner are supported by substantial evidence on the record as a whole.

Although described by 33 U.S.C. § 921, as an "injunction proceeding," the instant action is purely one of judicial review. Bassett v. Massman Constr. Co., 120 F.2d 230 (8th Cir.), cert. denied, 314 U.S. 648, 62 S.Ct. 92, 86 L.Ed. 520 (1941). The findings of fact by the Deputy Commissioner are to be accepted unless they are unsupported by substantial evidence on the record as a whole. Rotondi v. McLellan, 194 F. Supp. 415 (E.D.N.Y.1961). See also, Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); John W. McGrath Corp. v. Hughes, 264 F.2d 314 (2d Cir.), cert. denied, 360 U.S. 931, 79 S.Ct. 1451, 3 L.Ed.2d 1545 (1959); Gooding v. Willard, 209 F.2d 913 (2d Cir. 1954).

*The Findings*

The order of the Deputy Commissioner was based upon the following findings:

1. From October 10, 1961 to December 18, 1961, the claimant was in the employ of Main Ship Repair Corporation as a welder engaged in the repair of the S.S. Kennebec;

2. from 1942 to October 9, 1961, the claimant had worked as a welder for many employers, including Main Ship Repair Corporation;

3. during the course of these employments prior to October 10, 1961, he was exposed to injurious noises generated by pneumatic tools operated by chippers, scalers, and caulkers;

4. Main Ship Repair Corporation was the last employer during the periods of employment wherein the claimant was exposed to such noises;

5. the claimant became aware of a deterioration of his hearing on January 27, 1962.

The Deputy Commissioner concluded that the claimant sustained a permanent partial disability (an 11.1% binaural loss of hearing computed in accordance with the American Medical Association formula), occupational in nature, caused by a continuous accumulative deterioration of his hearing as a result of his exposure to injurious noise. The claimant was awarded compensation in the amount of $1,554.00.

Pursuant to an agreement between the parties, embodied in an order of this court, the matter herein was remanded to the Deputy Commissioner for further hearing, findings and evidence consistent with the record. The Deputy

---

1. This order was rendered pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424, as amended, 33 U.S.C. §§ 901–950.

Commissioner made the following additional findings:

1. The audiogram dated August 9, 1954, consisted of one single testing in an environment that was not sound-proof, thereby exposing the testing procedure to ambient or background noises;

2. the audiogram dated July 9, 1954, consisted solely of one single testing of brief duration, at an unknown hour of the day, by an operator of qualified but limited professional training;

3. a proper audiometric examination is made by skilled, competent and professionally trained individuals under the supervision of an otologist;

4. a proper otological examination consists of more than a single testing. The Deputy Commissioner then concluded that the audiometric tests conducted in 1954 were inadequate, inconclusive and insufficient as evidence, and therefore the award would not be altered.

### The Evidence

The plaintiffs contend that two audiograms taken in 1954 establish that claimant suffered a loss of hearing before his employment with Main Ship Repair Corporation commencing on October 10, 1961, and therefore plaintiffs are liable only for the measurable increase in loss of hearing over that allegedly established in 1954. The threshold question is whether the record as a whole supports the finding of the Deputy Commissioner that the audiograms taken in 1954 are inadequate, inconclusive and insufficient. The court finds that the record as a whole supports such a finding.

Dr. Goldner, an otologist, who is in charge of the Audiological Clinic at Polyclinic Hospital and Queens Hospital Center, testified that the technique of taking audiograms is a factor and many audiograms need be taken. He further testified that the circumstances under which an audiogram is conducted may significantly affect the result thereof; such as, working under noisy conditions, fatigue or having a cold. In the course of such an examination it is proper to first take a history and then conduct an examination of the area of the body which is concerned. Dr. Goldner testified that he had often observed errors in audiograms taken by a registered nurse, that a machine is a machine and there is a margin of error which a doctor must take into consideration. He further observed that a registered nurse can be utilized for limited testing but under very strict supervision.

Mr. Alphonso Russen, a registered nurse employed by Bethlehem Steel Corporation, testified that on July 9, 1954, he conducted a single audiometric examination of the claimant. Mr. Russen admittedly lacks special training other than a three day course and does not consider himself an expert in the operation of an audiogram machine. He had no recollection as to what time of day the examination was conducted or whether claimant had worked that day; nor did he recall examining claimant's nose and throat, whether a doctor was in attendance at any time or whether he advised the claimant of any measured hearing loss.

Carol Ann Klotz, a registered nurse employed by Todd Shipyards Corporation, testified that on August 9, 1954, she conducted a single audiometric examination of the claimant. She admitted that her sole training in the use of the machine was given her by another nurse. The examination was of brief duration and was conducted in an ordinary room which was neither airtight nor soundproof and at a time when the windows were probably open. She made no physical examination of claimant's nose, throat or ears and submitted her findings to a doctor who was not an otologist.

It cannot be said that the preceding testimony will not support a logical deduction or inference that the 1954 audiograms were inadequate, inconclusive and insufficient to establish any prior loss of hearing or to establish an awareness by claimant of any such prior loss. Logical deductions and inferences drawn by the Deputy Commissioner from the evidence are to be taken as established facts not judicially reviewable. Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62

S.Ct. 221, 86 L.Ed. 184 (1941); Mississippi Shipping Co. v. Henderson, 231 F.2d 457 (5th Cir. 1956); Pan American Airways, Inc. v. Willard, 99 F. Supp. 257 (S.D.N.Y.1951). Moreover, where the evidence permits of conflicting inferences, the inference or conclusion drawn by the Deputy Commissioner will not be reviewed by the court. Parker v. Motor Boat Sales, Inc., supra; Pan American Airways, Inc. v. Willard, supra.

The motion of plaintiffs, Main Ship Repair Corporation and Liberty Mutual Insurance Company, for summary judgment is denied. The motion of the defendant for summary judgment is granted. Travelers Insurance Co. v. Cardillo, 225 F.2d 137 (2d Cir.), cert. denied, Ira S. Bushey & Sons, Inc. v. Cardillo, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955).

Settle on order on or before ten (10) days from the date hereof.