**REX INVESTIGATIVE AND PATROL AGENCY, INC., Plaintiff,**

v.

**Michael J. COLLURA et al., Defendants.**

**No. 69–C–1026.**

United States District Court,
E. D. New York.

June 15, 1971.

Johnson, Zimbalist, Tannen & Katzman, New York City, for plaintiff; by Max L. Katzman, New York City, of counsel.

Edward R. Neaher, U. S. Atty. Eastern District of New York, for defendant Michael J. Collura; by Louis E. Greco, U. S. Department of Justice, of counsel.

Joseph J. Kelly, West Nyack, N. Y., for defendant Aetna Ins. Co.

ZAVATT, District Judge.

Plaintiff and the defendants Michael J. Collura (Collura) and Aetna Insurance Company (Aetna) move for summary judgment in this case concerning a Compensation Order and Award of the Defendant Collura, Deputy Commissioner of the Second Compensation District of the United States Department of Labor, Bureau of Employees' Compensation (the Bureau), entered on July 22, 1969 pursuant to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq.

Plaintiff, Rex Investigative and Patrol Agency, Inc. (Rex), is a small family-owned corporation in the detective and watchmen's service business. At all times relevant to the resolution of the issues involved on this motion, Rex was performing watchmen's services for Merritt-Chapman and Scott Corporation (Merritt-Chapman), to wit, patrolling the deck of and pier adjacent to Merritt-Chapman's vessel, the CURB, which docked at Pier 22, Staten Island, New York. In supplying said services, Rex employed the defendant Wesley Sarco (Sarco) who, on October 15, 1967, while on patrol aboard the CURB, sustained an injury to the lower back.

Sarco filed a claim with the New York State Workmen's Compensation Board, which was denied on March 15, 1968 in a "Notice of Decision" which contained the notation "closed disallowed no jurisdiction." Thereafter, on March 25, 1968, Sarco filed a claim for compensation with the Bureau. With reference to this claim, several informal conferences with the Deputy Commissioner were scheduled, on notice to Rex, none of which it attended. For this reason, the case was set down for a formal hearing on May 13, 1969. The alleged invalidity of the order and award that issued following that hearing is the basis for the plaintiff's motion.

The Order of the Deputy Commissioner found, in relevant part, that the defendant Sarco, while performing services as a watchman aboard the CURB,

was in the employ of the plaintiff; that, in the performance of said duties, he was injured while the vessel was afloat upon the navigable waters of the United States, within the jurisdiction of the United States Workmen's Compensation Bureau; that his average weekly wage at the time of the injury was $131.30 per week; that as a result of the injury he was wholly disabled from October 16, 1967 to March 10, 1968, for which he was entitled to $70.00 per week; that as of March 11, 1968, the temporary total disability ended, and Sarco became temporarily and partially disabled, preventing Sarco from returning to his duties as a watchman; that, nevertheless, he continued working as a porter for which he earned $100.00 per week until July 20, 1969; that for this period he was entitled to 71 weeks of compensation at the rate of two-thirds the difference between his average wage at the time of the accident and his wage subsequent thereto, or $20.87 per week; that the total award was $2,951.77; and, further, that the employer had not secured compensation insurance for liability under the Act. Because of his finding that Rex was an "uninsured employer," the Deputy Commissioner directed the employer (and not the defendant Aetna Insurance Company) to pay the full amount of the award to Sarco.

### The Plaintiff's Contentions

In support of its motion for summary judgment, plaintiff makes the following claims:

(1) The Compensation Order is invalid because the Deputy Commissioner lacked jurisdiction over the claim for compensation;

(2) Plaintiff was denied due process of law at the hearing because (a) it was unrepresented by counsel and (b) the hearing was held without the presence of Aetna, an allegedly necessary party;

(3) The Deputy Commissioner erred in directing the Order against the plaintiff alone because plaintiff's liability for compensation was covered by an insurance policy with Aetna;

(4) The Deputy Commissioner erred in his computation of the compensation award;

(5) The Order was invalid because the Deputy Commissioner's findings were not supported by substantial evidence.

■ In its first claim, plaintiff concedes that Sarco was aboard the CURB at the time of the accident but claims that his presence was merely a "temporary incident" of his employment on the pier and, therefore, Sarco's claim was not within federal cognizance. This conclusion is erroneous. 33 U.S.C. § 903 requires only that the injury occur upon the navigable waters of the United States in order for compensation to be payable under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), not the employment itself. The Deputy Commissioner quite properly found, on the undisputed evidence in the record, that the injury to Sarco occurred while the CURB was afloat upon navigable waters. In addition, even if Sarco's employment were to be deemed primarily land-based, his temporary presence aboard the vessel would be sufficient to sustain jurisdiction under the Act. Parker v. Motor Boat Sales, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184 (1941). Furthermore, it would seem that even if the place of employment, rather than the place of injury, is the test for jurisdiction under the statute, there is some basis for concluding that a good deal of Sarco's responsibility was concerned with patrolling the deck of the CURB (16*). Finally, it would also appear that inherent in the New York State Workmen's Compensation Board's order dismissing for lack of jurisdiction was the finding that this claim properly belonged before a federal, rather than a state, agency.

---

* Except where otherwise indicated, numbers in parentheses refer to pages of the hearing transcript.

■■ Plaintiff's second and most serious argument concerns the alleged denial of due process in the proceedings before the Deputy Commissioner arising from plaintiff's lack of representation by counsel at the hearing. It is a fundamental principle of constitutional law that the essential elements of due process are adequate notice and an opportunity to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As to the right to counsel, however, plaintiff misconceives the concept of due process. Plaintiff cites a long line of cases concerning the right to counsel at various proceedings, but confuses the *right* to be represented by counsel, which *is* inherent in due process, with the *necessity* of being represented by counsel, which is not.

As noted, *supra,* Rex was given notice of four informal conferences, held prior to the formal hearing, which were unattended by Rex. The record indicates that on April 18, 1969, a letter was sent by the Deputy Commissioner to John Occhino, president of Rex, informing him that a formal hearing was to be held shortly thereafter; the issues to be presented thereat; the law applicable to the case; and the admonition:

"\* \* \* it is essential that you or your representative attend this hearing to protect your interest."

At the hearing itself, Rex was represented by one Mary Morretino, the secretary of plaintiff corporation, who was not an attorney. At various times throughout the hearing, she protested the inherent unfairness of the proceeding on the ground that she lacked an understanding of the law relating to Sarco's claim, and requested an adjournment for the purpose of obtaining competent counsel. The ground asserted for this adjournment (which plaintiff again urges in support of the instant motion) was that, because of Mr. Occhino's alleged illness, Rex was unable to retain counsel in time for the hearing.

The Deputy Commissioner, referring to the Bureau's prior efforts to bring the parties in this case together, recited the list of unattended conferences, concluding that Rex had been given ample opportunity to retain counsel. He, therefore, denied Mrs. Morretino's application for an adjournment. As an alternative, he advised Mrs. Morretino that she could ask questions of witnesses and graciously offered his assistance in framing them. He also permitted her to be sworn and testify to the employer's position, which she declined to do, insistently reiterating her request for an adjournment. It should be emphasized that, as the Deputy Commissioner noted at the hearing, the injured employee had not received one penny for his injuries and lost wages up to the time of the hearing, almost one and one-half years after the date of the accident.

■ It is apparent from the foregoing that plaintiff's claim as to a denial of due process at the hearing is without merit. As plaintiff concedes in its brief in support of this motion, absent its claim relating to Mr. Occhino's illness, plaintiff indeed had ample opportunity to engage counsel but failed to do so (plaintiff's brief, p. 7). The additional factor of Mr. Occhino's illness does not compel a different result. Certainly, if the employee's claim was as important to Rex at the time of the hearing as the present litigation indicates it to be, Rex could have just as easily arranged for counsel to appear at the hearing instead of the admittedly unqualified Mrs. Morretino. In addition, the Deputy Commissioner went far beyond the call of duty in offering his assistance to the corporate secretary who, acting as agent for the corporation, recalcitrantly refused it.

■ The second part of plaintiff's second claim, as well as its third claim, concerns the question of whether Rex's workmen's compensation policy with Aetna covered its liability for Sarco's injury. In this regard, the affidavit of Rex's president states that for several years Aetna accepted premiums from Rex with knowledge of the nature of its employees' duties; that he was never in-

formed by Aetna that a special "federal endorsement" was required for coverage under the LHWCA; that, while its policy with Aetna excluded certain claims from coverage, the activity in which Sarco was involved at the time of the accident was not so excluded. Alternatively, plaintiff argues that, whether or not an endorsement for federal coverage was formally written into the policy, Aetna's consistent and knowing acceptance of premiums created a "de facto" policy of insurance covering the claim in question here.

The glibness with which plaintiff suggests that this Court shift liability for Sarco's injuries to Aetna, on the bald assertion that the previous payment by Rex of premiums to Aetna justifies such a direction, betrays plaintiff's failure to investigate and comprehend the detailed requirements imposed upon employers by the LHWCA and the regulations promulgated thereunder. It is sufficient to note, without a detailed discussion of said requirements, that the Act prescribes the method by which every employer *must* secure payment of compensation, 33 U.S.C. § 932 et seq., and provides further that failure to secure such compensation shall be a misdemeanor punishable by fine and/or imprisonment, 33 U.S.C. § 938.

The regulations enacted in furtherance of the statute also set forth specific requirements which must be satisfied in order to impose liability on an insurance carrier for a claim for compensation filed against an employer. 20 C.F.R. §§ 32.0–32.20. In pertinent part, these regulations provide that a "longshoremen's endorsement" form be attached to the policy, 20 C.F.R. § 32.9; that a report of issuance of a policy with the aforesaid endorsement be sent to the Bureau by the carrier, 20 C.F.R. § 32.17; that each employer must "present to the deputy commissioner in the compensation district in which he has operations the policy which he has procured in compliance with [section 932 of the LHWCA]," 20 C.F.R. § 32.18; that a carrier which has executed the afore-

mentioned policy and longshoremen's endorsement must report, on a prescribed 3 by 5 inch index card, certain information contained in the said policy and endorsement, 20 C.F.R. § 32.16.

The record in this case reveals that none of the above-enumerated requirements was fulfilled by either Rex or Aetna. Neither party was able to furnish the court, upon its request, with a copy of the entire insurance policy issued by Aetna to the employer. It appears, however, from that portion of the policy attached as an appendix to plaintiff's memorandum of law, that the required longshoremen's endorsement was not a part of said policy.

With respect to the requisite index card indicating the employer's coverage under the Act, Mrs. Olive Williams, the Chief of Records and Files and Insurance Coverage for the Bureau, testified at the hearing that, at the time of the accident, the Bureau had no such card in its official files; that it is the responsibility of the *employer*, not the carrier, to see to it that such a card is duly filed; that if there is no record of receiving a card, the Bureau takes the position that the employer is not insured under the Act. The record also indicates that, on June 27, 1968 (10 months before the notice of formal hearing), a letter was sent to Rex by Aetna, informing the former that its policy with the insurance company did not cover injuries coming within the purview of the LHWCA. Consequently, the Deputy Commissioner concluded that Rex was an uninsured employer under the Act; that Aetna was not a necessary party to the case; and, in its Compensation Order, directed that the employer pay the full amount of the award. This Court is of the opinion that the Deputy Commissioner's conclusions in this regard were amply supported by the evidence in the record.

■ Plaintiff next argues that the Commissioner erred in his computation of the award. He first contends that there was no medical evidence in the record to support the finding of tempo-

rary total disability from the date of the accident until March 10, 1968. This claim is so meritricious that the court need only refer to the letter of a Dr. Michael Burman, an orthopedic surgeon, dated March 29, 1969, in which he states that, as of that date, Sarco "is considerably disabled" and has "not worked as a night watchman since the day of the accident."

Plaintiff's next contention is that the Deputy erred in his computation of the partial disability from March 11, 1968 to the date of the award. He argues that the Commissioner based his computation of Sarco's earnings (upon which the award is predicated) on Sarco's total earnings for the year prior to the accident; that his salary for that year comprised, for the most part, earnings from another employment; that, if the proper computation had been made, Sarco's salary would have been no more than $100 per week; that since March 11, 1968 he had been earning $100 per week in another employment; and, therefore, suffered no loss of earnings after that date. Plaintiff argues that because the Deputy Commissioner used $131.30 as Sarco's weekly salary, this did not represent his true earnings, and consequently, the award was in excess of his lost income.

This argument is based on a complete misreading of the statute not supported by any judicial decision.

■ The section of the Act for determining lost wages is 33 U.S.C. § 910, the relevant portions of which are set forth in the note.[1] In O'Hearne v. Maryland Casualty Co., 177 F.2d 979 (4th Cir. 1949), the operation of this section is explained as follows:

The reasoning underlying the act is that compensation is to be based upon the employee's earning capacity in the employment in which he is engaged at the time of injury. If he has worked in the employment for a year preceding the injury, his own earnings furnish the basis of compensation under subsection (a). If he has worked in the employment less than a year, compensation is computed under subsection (b) and is based on the average earnings over the preceding year of an employee of the same class working in such employment. *Where neither (a) nor (b) can reasonably or fairly be applied because of the nature of*

---

1. § 910. Determination of pay

Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary for a six-day worker and two hundred and sixty times the average daily wage or salary for a five-day worker, which he shall have earned in such employment during the days when so employed.

(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings, if a six-day worker, shall consist of three hundred times the average daily wage or salary,

and, if a five-day worker, two hundred and sixty times the average daily wage or salary, which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

(c) If either of the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such average annual earnings shall be such sum as, having regard to the previous earnings of the injured employee in the employment in which he was working at the time of the injury, and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, or other employment of such employee, including the reasonable value of the services of the employee if engaged in self-employment, shall reasonably represent the annual earning capacity of the injured employee. * * *

*the employment, as where it is intermittent or discontinuous in nature, then the compensation is to be determined under (c) on the basis of the annual earning capacity of the employee.* * * * The reason that the actual earnings of the employee are taken into account under (c) but not under (a) or (b) is [that] * * * [c]ompensation is based upon the earning capacity which is impaired or destroyed by the injury; and where the injury occurs in employment of a permanent and steady character, compensation based upon the earnings of that employment fairly compensate for the loss of earning capacity that has been sustained. Where the employment is discontinuous or irregular, however, compensation cannot fairly be based upon such earnings. *To treat the irregular wage as though it were regular, would be unfair to the employer, and to treat the earnings from the employment as the sole earnings of the employee would be unfair to him, since the injury he sustained in the service of his employer has impaired his earning capacity not only in that service but also in the other work in which he has been engaged. In such situation, it is necessary to consider the history of the employee's earnings, including those from other employment, to determine his earning capacity; and this is what (c) contemplates* * * * (Emphasis added.) 177 F.2d at 981–982.

The "intermittent and discontinuous" test has apparently become accepted as the dividing line between applying (a) and (b) on the one hand, and (c) on the other, White v. O'Hearne, 338 F.2d 464 (4th Cir. 1964); Johnson v. Britton, 110 U.S.App.D.C. 164, 290 F.2d 355 (1961).

The facts of this case indicate that it is a perfect example for the application of (c). Sarco's work was clearly of an "intermittent and discontinuous" nature. Furthermore, basing his earning capacity on the salary for the job in which he was injured would not "reasonably or fairly" represent his real earning capacity, since, as plaintiff has so adequately pointed out, approximately 75% of his earnings came from another job. Therefore, the Commissioner was entirely correct in using (c) to determine Sarco's lost income from March 11, 1968.

In reviewing the findings and conclusions of the Deputy Commissioner, this Court has been guided by the well-settled principle that such findings and conclusions are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456 (1951). For all of the foregoing reasons, the court accepts the findings and conclusions of the Deputy Commissioner.

The plaintiff's motion for summary judgment is denied; the motions of the defendants Collura and Aetna are granted.

This is an order.