## INDUSTRIAL INDEMNITY EXCHANGE et al. v. PILLSBURY et al.

### No. 12115.

United States Court of Appeals
Ninth Circuit.

June 22, 1949.

Leonard, Hanna & Brophy, Donald R. Brophy and Ivan A. Schwab, San Francisco, Cal., for appellants.

Frank J. Hennessy, U. S. Atty., Daniel C. Deasy, Jr., Asst. U. S. Atty., San Francisco, Cal. (Ward E. Boote, Chief Counsel, Herbert P. Miller, Asst. Chief Counsel, Bureau of Employees' Compensation, Federal Security Agency, Washington, D. C., of counsel), for appellee Pillsbury.

Before STEPHENS, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

Adrian Maneke sustained an injury arising out of his employment, resulting in his death on June 26, 1947. His employer, one of the appellants herein, was insured against liability for compensation benefits payable under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., hereinafter called the Act, by Industrial Indemnity Exchange, also an appellant herein. The decedent's parents filed an application for benefits under the Act with appellee Pillsbury, Deputy Commissioner, Bureau of Employees' Compensation, for the area wherein the accident occurred. Subsequently a hearing was

held and on February 19, 1948, an award of death benefit was issued by the deputy commissioner in favor of the parents upon the finding that they were dependent upon decedent, to a substantial extent, for support at the time of his injury.

Pursuant to the provisions of 33 U.S.C.A. § 921 appellants filed a complaint in the district court seeking an injunction against the enforcement of the award order. The complaint was dismissed. This appeal is from the order of dismissal.

Appellants' principal contention is the alleged insufficiency of the evidence to support the finding of dependency. It is conceded that the evidence establishes dependency at a time several months prior to the injury but, it is urged, the dependency terminated prior to the injury because of a basic change in the relationship between the decedent and his parents. See, 33 U.S.C.A. § 909(f).

The undisputed evidence establishes that: shortly after his discharge from the army Adrian Maneke was employed in Kansas City, Missouri, from March 1946 until January 1947; during this time his custom was to spend alternate weekends at his parents' farm in Lebanon, Missouri; he made contributions from his earnings toward his parents' support in sums ranging from $40 to $50 per month; he paid a doctor bill of $25 incurred by his father for medical treatment; furnished money for a refrigerator and an electric sweeper for his mother, and authorized her to draw checks on his bank account to meet family needs. In addition to these expenditures Adrian contributed $275 for alterations on the barn and about $165 for repairs to the house.

In January 1947, Adrian, who was unmarried, went to California where he sought employment. Before leaving he gave his father $40 or $50 to meet general living expenses and, in February or March, he sent home an additional $50. Adrian held temporary jobs in Los Angeles and Modesto, and obtained employment with appellants in Alameda in May 1947. On June 26, 1947, he died.

The father testified that the farm produces very little income. He has a few cows and chickens, but sales of cream and eggs barely pay for food and upkeep. It was his expectation that Adrian would continue to contribute to his support after he left for California. Clarence Maneke, a second son, testified that he and his brother had arranged that Adrian should furnish financial support for their parents' welfare in return for which he was to inherit the farm. Clarence, who was married and had his own family to support, was to "look after" the parents in case of sickness, and requirements of his aged parents other than financial. This plan was consented to by their father.

Clarence also testified that Adrian had written him once from California, stating that if his parents were in need he would come home immediately. According to Clarence the California trip was considered by Adrian as a vacation and he intended to return to Missouri in the fall of 1947.

We think this evidence supports the finding of the deputy commissioner that the parents were dependent on the decedent at the time of his injury. Dependency is a question of fact and the deputy commissioner was entitled to draw reasonable inferences from the testimony in making his findings. Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 246, 62 S.Ct. 221, 86 L.Ed. 184; Liberty Mutual Insurance Co. v. Gray, 9 Cir., 137 F.2d 926. A finding of dependency as required by the Act is satisfied if partial dependency is shown. Ottenstein v. Britton, 82 U.S.App.D.C. 10, 160 F.2d 253; Norfolk Shipbuilding & Drydock Co. v. Parker, 4 Cir., 154 F.2d 560; Wende v. McManigal, 2 Cir., 135 F.2d 151. There is no requirement of a showing that the parents would be destitute without the decedent's support, but simply that decedent's contributions were needed and relied on to maintain them in the position in life to which they were accustomed. Wende v. McManigal, supra.

The parents were enabled to maintain their standard of living because of the substantial contributions Adrian made prior to his trip to California. His contributions were the sole source of their financial support other than the meagre farm income. We see no substantial change in this situa-

tion after Adrian's trip to California. He advanced $50 to his father before his departure and a month or two later sent a like sum from California. Throughout his absence his mother had authority to draw checks on his bank account to meet family expenses. The money advanced for repairs to the farm buildings added to the general support requirements. The sum of $165, advanced for repairs on the farm house, was spent during the time Adrian was in California. These repairs were completed a few weeks before his death. The parents were enabled to sustain their accustomed living status during the first six months of 1947 because of prior advancements made by Adrian before leaving for California and the money sent from there.

The evidence satisfies us that it was understood that Adrian would and did assume the financial responsibility for maintaining the parents while Clarence would care for their other needs. The evidence supports the conclusion that Adrian's temporary absence in California was not considered by any family members as terminating the support arrangement. His failure to make regular contributions during his stay in California is reasonably attributable to the irregularity of his work. He had been employed by the Dry Dock Company one month before his death; also, his California trip was in the nature of a vacation, and means of support had been provided by the arrangement for his mother to draw on the bank account in the event money given her for support of parents became exhausted.

The situation presented here seems to be the typical one of hard working, frugal people wresting a "living" from a small farm. The farming enterprise was made to yield that "living" during the time the parents had the health and vigor to continue the incessant labor required. The sons, it may be assumed, took part in the farming enterprise from the time they were of sufficient age. The ability of the boys to earn and produce grew larger as that of the parents, because of advancing years, grew less and their need for assist-

ance increased. The sons were willing to shoulder that responsibility. Adrian, unmarried, was in a better position to furnish financial support and did so. The fact that he made no regular remittances while temporarily sojourning in California is not sufficient to establish non-dependency of the parents during that time. Funds belonging to Adrian were available to them. He left the farm with the intention of returning at some time in the near future, immediately should the necessities of the parents so require.

Appellants also contend that since § 9(d) of the Act, 33 U.S.C.A. § 909(d), provides that benefit payments shall continue only during dependency, and the record fails to show the parents continued to be dependent during the four months between the time of the injury and the date of the hearing before the deputy commissioner, the award was improperly issued. No evidence was introduced concerning the financial status of the parents subsequent to the date of the injury, but we think the circumstances are such as to warrant the conclusion that no substantial change in dependency on the part of the parents could have occurred during that period. Furthermore, dependency having been found to exist it is presumed to continue until the contrary is satisfactorily shown. Cf., Mount Vernon Hotel Co. v. Block, 9 Cir., 157 F.2d 637. In the case of Leyerly v. United States, 10 Cir., 162 F.2d 79, 86, it was held that: "The status, [of loco parentis] when once established, is presumed to continue, and one who avers its discontinuance has the burden of proving it." We think that case is very similar in many respects to the instant case and supports our conclusion that the status of dependency "when once established, is presumed to continue, and one who avers its discontinuance has the burden of proving it."

Affirmed.

Judge STEPHENS did not participate in the decision of this case.