## VINNELL CORP. OF CALIFORNIA et al. v. PILLSBURY et al.

No. 13186.

United States Court of Appeals Ninth Circuit.

Nov. 14, 1952.

Tipton, Weingand & Tipton and Jean Wunderlich of Los Angeles, Cal., for appellant.

Chauncey Tramutolo, U. S. Atty., and Macklin Fleming, Asst. U. S. Atty., San Francisco, Cal. (William S. Tyson, Solicitor of Labor, Ward E. Boote, Asst. Sol. of Labor, Herbert P. Miller, and James E. Hughes, Attys., U. S. Dept. of Labor, Washington, D. C., of counsel), for appellee Pillsbury.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a decision of the United States District Court for the Nor-

thern District of California, Southern Division, granting appellee's motion to dismiss appellant's complaint for an injunction against the Deputy Commissioner.

The sole question involved is whether there is substantial evidence in the record considered as a whole to support the finding of the Deputy Commissioner that decedent employee's mother was a "partial dependent" and entitled to a $13.13 per week death benefit.

Alfred Ray was accidentally killed on September 16, 1950, in the course of employment on a Korea construction crew. He had just commenced work within the previous two weeks and on September 4th had signed an allotment form in favor of his mother, Mrs. Mable Graeber, who had remarried. Between January and September 1950 he had not worked but had lived at home. Prior to January 1950, Ray was working on Guam, and until September 1949 had been sending portions of his income home to his mother, who had put it in her own account and had drawn out the proceeds until they were nearly exhausted in January 1950. Ray had a bank account in his own name. The mother testified that she always relied on her son to help her; that the proceeds went for such things as an installment on the house and taxes (Tr. 86); clothing for herself, drapes or things like that for the home (Tr. 82); that the money was mainly used for her support; that she owned no stock or securities and had no other income.

The mother further testified that her husband had been out of work since September 5, 1950, and until just before the hearing in this case in March 1951 (Tr. 70), and had been out of work on another occasion in the past five years; that her husband provided her living expenses "when he was working. When he was not working our son [Ray] helped support us." (Tr. 73).

On the testimony given, the Deputy Commissioner found that the mother was a "partial dependent" of the son and awarded her a death benefit of $13.13 per week pursuant to the Longshoremen's Act, 42 U.S.C.A. §§ 1651–1654. The company and its insurer contend there is no substantial evidence to support this finding.

■ Dependency is a question of fact. Partial dependence is enough and the test is that the contributions were needed and relied upon to maintain the alleged dependent in the position in life to which she was accustomed. Industrial Indemnity Exchange v. Pillsbury, 9 Cir., 175 F.2d 911, 912. Although the dependent mother's husband made $4,000 in one of a succession of years of partial employment, a partial dependency on her son may still exist. London Guarantee etc. Co. v. Hoage, 64 App. D.C. 105, 75 F.2d 236, also holding that the Act should be liberally construed in favor of dependency.

■ Were the contributions here "relied on" and had they ceased? The son's last prior allotment order for payment to the mother was in September 1949, one year before death. However, after January 1950, he was unable to contribute because he was not working. Dependency may remain even though there is a temporary cessation due to lack of employment. When Ray recommenced work in early September of 1950 he made out another allotment order payable to his mother, on which payments were made to her after his death. The mother continued thereafter to withdraw from her bank account funds which he had sent to her earlier for her use. There was also testimony that the son on occasions between September 1949 and September 1950 gave his mother money from his own bank deposits, which she spent directly without putting it into her account.

The employer contends that these payments were not "relied upon" for her *support* and were not so intended. There is testimony from which it could be inferred that the money was being saved for the son. On the other hand, the general purport of the remainder of her testimony was that she was to use as much as she needed for her customary mode of living and save whatever was left for her son. Apparently, little, if any, was saved. The husband being out of work when the son made his last allotment, there was a clear need for such contribution.

■ We think there is enough in the record to support the finding that the money was used for purposes of support and expenses reasonably necessary to her mode of living.

The order is affirmed.