## S. BUCHSBAUM & CO. v. FEDERAL TRADE COMMISSION.

### No. 8504.

Circuit Court of Appeals, Seventh Circuit.

Jan. 14, 1946.

Writ of Certiorari Granted May 6, 1946.

See 66 S.Ct. 1016.

Walter H. Moses, of Chicago, Ill. (Moses, Kennedy, Stein & Bachrach, of Chicago, Ill., of counsel), for petitioner.

Joseph J. Smith, Jr., Asst. Chief Counsel, Federal Trade Commission, of Washington, D. C., W. T. Kelley, Chief Counsel, and Carl C. Wheaton, Sp. Atty., both of Washington, D. C., for respondent.

Before SPARKS and KERNER, Circuit Judges, and BALTZELL, District Judge.

SPARKS, Circut Judge.

By this proceeding petitioner seeks to review and set aside a cease and desist order of the Federal Trade Commission. The complaint charged petitioner with having engaged in unfair and deceptive acts and practices in violation of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq. The charge was that by the use of the trade name "Elasti-Glass" petitioner had falsely represented that various men's accessories made by petitioner from a chemically manufactured plasticized resinous material called "Vinylite" were made and constructed of glass. The answer admitted that petitioner manufactured "Elasti-Glass" products and advertised and sold them in interstate commerce as alleged in the complaint. It denied, however, that its trade name and representations were false or deceptive. It asserted that although "Vinylite" was a chemically manufactured plasticized resinous material, it was in fact an organic glass, a synthetic resin glass scientifically produced and properly designated as glass. It further alleged that the word "glass," as properly used and defined, includes both organic glasses and inorganic glasses, and denied that, by the use of the term "Elasti-Glass" or in any other way, it had misled or deceived the public into believing that its products were made of inorganic glass.

In substance the Commission found the facts as follows: Petitioner is an Illinois corporation engaged in the business of manufacturing various men's accessories such as suspenders, belts, garters, etc., which it advertises and sells in interstate commerce under the trade name "Elasti-Glass." It also found that glass as understood and recognized by the general public is the common glass found in window panes, tumblers, and bottles, and petitioner's use of the term "Elasti-Glass" tends to mislead a substantial portion of the purchasing public into the belief that petitioner's products are made from common glass specially processed in some manner to make it pliable and elastic; that petitioner's products are not glass as understood by the purchasing public; that they are made of plastic material, "Vinylite," which has none of the characteristics of glass as recognized and understood by the general public, other than that of transparency, and which differs so greatly in composition, methods of manufacture, and properties from those substances commonly known as glass that it constitutes a part of a separate division of chemical technology. On these facts the Commission concluded the petitioner was engaged in deceptive acts and practices in violation of the Federal Trade Commission Act, and accordingly ordered petitioner, in connection with the offering for sale, the selling and distribution of men's accessories and other similar articles of merchandise in interstate commerce, to cease and desist from:

1. Using the term "Elasti-Glass" or any other term containing the word "glass" to designate or describe any article of merchandise made of the material "Vinylite" or any other similar compound.

2. Representing in any manner, either directly or by implication, that any article of merchandise made from "Vinylite" or any other similar synthetic resinous compound is made of glass.

The first question raised for our consideration is whether the Commission erred in denying petitioner's motion for a trial de novo, and in failing to strike from the record the evidence taken before Trial Examiner Reeves.

W. C. Reeves was the Trial Examiner originally appointed to act in this case. He conducted hearings on April 3 and 4, 1941, at Chicago, and on April 11 and 12, 1941, at Toledo, Ohio, at which evidence was taken covering 619 pages of transcript, and 48 Commission exhibits and 17 of petitioner's exhibits were received in evidence. Sixteen witnesses for the Commission testified before him, including all six of the consumer witnesses.

Mr. Reeves died October 26, 1941. Trial Examiner Vilas was appointed on November 17, 1941, to complete the taking of testimony, close the case and make his report upon the evidence. Within four days from that date petitioner filed with the Commission its motion that there be a trial de novo and that the transcript of hearings before Trial Examiner Reeves be stricken from the record. The motion was denied by the Commission on December 5, 1941, and Examiner Vilas proceeded from where Mr. Reeves left off, and based his report both upon the evidence taken before Mr. Reeves and that heard by him. On these facts appellant contends that the court erred in not granting a trial de novo. We think the ruling was erroneous, and we find no authority adverse to our conclusion. Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129; Wigmore on Evidence (3rd Ed.) Vol. III, § 946; and Rubin v. Lipman, D.C., 215 F. 669.

 The Commission contends that what it calls the marked difference between the functions and authority of trial judges and masters on the one hand, and trial examiners on the other, precludes the application of the rule of confrontation in the authorities just referred to. Hence it argues that the finding of examiners being advisory only, there is not present in their findings the principal consideration, that is to say, finality of factual judgment, which requires a trial de novo in the event of the death or disability of a judge or master. We think this does not meet petitioner's contention. The elementary principle underlying all trials of whatever nature seems to be that the rule of confrontation shall be applied where the witnesses are available for that purpose. Of course, where under certain conditions witnesses are not available their testimony may be taken by deposition, but it is not contended that that condition is present here. To be sure, the Commission may disregard the recommendation of the Examiner, but it seems to us that that fact does not alter the rule of confrontation which is stressed in the citations we have given. Indeed, under those authorities the Commission should disregard the finding of the Examiner if he had not complied with the rule of confrontation, and that is the precise question which confronts us. Congress has authorized the appointment of Examiners in such cases and they are the eyes and ears of the Commission. There is no complaint as to this delegated power, but it certainly cannot be said that the appointment would free the Examiner from the duty of observing the demeanor of witnesses, for this would amount to a lack of due process to which petitioner is entitled.

In the case of Ohio Bell Telephone Co. v. Public Utilities Commission, supra, [304 U.S. 292, 57 S.Ct. 730] Justice Cardozo gave expression to the following language:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. * * * Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' * * * of a fair and open hearing be maintained in its integrity. * * * The right to such a hearing is one of 'the rudiments of fair play' * * * assured to every litigant by the Fourteenth Amendment as a minimal requirement. * * * There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored."

In the case of Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 777, 999, 82 L.Ed. 1129, Chief Justice Hughes used the following language:

"Congress, in requiring a 'full hearing,' had regard to judicial standards,—not in any technical sense but with respect to those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature. * * *"

"The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these

multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play."

 Of course, we are not permitted to disturb a finding of the Commission if it is supported by substantial evidence. The principal reason for this rule is that the Commission, or its Examiner, has the opportunity of observing the demeanor of witnesses and thus has a better opportunity of passing upon the credibility of such witnesses, an opportunity which is not given to the reviewing court, and this is as it should be. Duvall et al. v. Barry, 7 Cir., 103 F.2d 653. In this case neither the Commission nor its Examiner had that opportunity with respect to most of the witnesses. The reason for the rule has failed in this case, however, if the ruling of the Commission stands this court is still bound by the rule. We think there was error in the ruling.

 Respondent insists that there is no constitutional right to the benefit of demeanor evidence; that it is no more than a secondary and dispensable advantage of the rule of confrontation. In support of this contention it relies upon Wigmore on Evidence (3rd Ed.) §§ 1395, 1396. These sections do not support that contention. That author states that the process of confrontation has two purposes. The first is to secure for the opponent the opportunity of cross-examination, the second is to have the personal appearance of the witness before the judge and jury, from which they are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying. In § 1396 the author states: "Nevertheless, the secondary advantage, incidentally obtained for the tribunal by the witness' presence before it —the demeanor-evidence—is an advantage to be insisted upon whenever it can be had. No one has doubted that it is highly desirable, if only it is available." The author concludes that the rule may be dispensed with in cases of unavailability. Here there is no claim by anyone that the witnesses were unavailable, and counsel has cited no decision of our Supreme Court which in any way abrogates the ruling in the Ohio Bell Telephone Company case, and the Morgan case, supra, both of which cases hold that a failure in this respect would amount to a failure of due process. So long as these cases stand, neither we nor the Commission can ignore them.

Other questions are presented concerning which we intimate no opinion. The Commission's order is set aside and the cause is remanded to the Commission for further proceedings not inconsistent with this opinion.