John D. VAN TESLAAR

v.

Admiral Chester R. BENDER, Commandant of the United States Coast Guard.

Civ. A. No. 70–988–M.

United States District Court,

D. Maryland.

Oct. 17, 1973.

Robert C. Prem, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., and James M. Kramon, Asst. U. S. Atty., Baltimore, Md., and John H. Minan, Dept. of Justice, Washington, D. C., for defendant.

JAMES R. MILLER, Jr., District Judge.

*Memorandum Opinion*

This is an administrative appeal pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706, from a ruling of the Commandant of the U.S. Coast Guard, which resulted in plaintiff's having been found guilty of having shoved and orally abused a superior officer. Plaintiff has filed a motion for summary judgment and defendant has responded with a cross motion for summary judgment. The issues presented by the motions (as agreed in the pretrial order) are as follows:

1. Whether the Coast Guard has complied with 46 C.F.R. 137.05–10, and if not, whether noncompliance constitutes a jurisdictional bar to the administrative proceedings against the plaintiff.

2. Whether the substitution of hearing examiners midway in the administrative evidentiary proceedings, without a recommencement of the proceedings *de novo,* deprived plaintiff of a fair hearing.

3. Whether plaintiff was denied a fair hearing because of improper venue of the administrative proceedings.

4. Whether the plaintiff was denied a fair hearing as a result of the hearing examiner's refusal to issue subpoenas with respect to witnesses and documentary evidence located in Houston, Texas.

The parties agreed that the motions should be decided upon the record made before the administrative agency, the U.S. Coast Guard.

The background of this dispute is as follows. Plaintiff, a merchant marine officer, had an altercation with a superior officer while their ship was tied up at Houston, Texas. The difficulty between the two men arose out of their different views as to the most appropriate way to fight a fire which had occurred on January 7, 1966, in one of the ship's boilers. A scuffle ensued in which plaintiff was struck in the eye by the other officer and left the ship in Houston where he apparently spent approximately ten days in the hospital. (tr. 224–226).

On January 7, 1966, a complaint alleging that plaintiff was guilty of misconduct was filed with the U.S. Coast Guard. Soon thereafter, an investigation was commenced pursuant to 46 U.S.C. § 239.

## I

Plaintiff contends that 46 C.F.R. § 137.05–10 required the investigating officer assigned to plaintiff's case to advise plaintiff "informally of the substance of the complaint against him and afford him an opportunity to make such comment as he may desire." Relying upon the record, plaintiff states that the evidence clearly establishes that he was not informed of the substance of the complaint until charges had been formally served on him. (See tr. 146–173).

■ Assuming that the Coast Guard did fail to give plaintiff informal notice of the complaint, the important question is whether failure to give said notice is a jurisdictional bar to the administrative proceedings which were subsequently instituted against the plaintiff pursuant to 46 U.S.C. § 239. In substance, plaintiff appears to argue that § 137.-05–10 is an element of due process which he has been denied. Plaintiff states that § 137.05–10 was intended to introduce fairness into the charging procedure by allowing the person who is to be charged the opportunity to rebut the complaint and thereby persuade the investigating officer not to file formal charges. Plaintiff also contends that § 137.05–10 provides a safeguard for civilians who are prosecuted by the military.

In reply, the defendant argues that even if informal notice had not been delivered to the plaintiff, said failure could be no more than harmless or non-prejudicial error. Citing 5 U.S.C. § 706(2), defendant claims that this court must take due account "of the rule of prejudicial error" when reviewing the actions of the Commandant. Further, as stated in NLRB v. Seine & Line Fishermen's Union of San Pedro, 374 F.2d 974, 981 (9th Cir. 1967), cert. denied, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261 (1967), " 'the burden of showing that prejudice has resulted' is on the party claiming injury from the erroneous rulings." See also Arthur Murray Studio v. FTC, 458 F.2d 622 (5th Cir. 1972); National Capital Airlines v. CAB, 136 U.S.App.D.C. 86, 419 F.2d 668 (1969), cert. denied, 398 U.S. 908, 90 S.Ct. 1693, 26 L.Ed.2d 68 (1970); Pacific Molasses Co. v. FTC, 356 F.2d 386 (5th Cir. 1966). Relying upon the administrative record, the defendant points out that the plaintiff made no objection concerning the Coast Guard's failure to comply with § 137.05–10 on February 28, 1966, the day plaintiff was served with formal charges. (tr. 146–173). In fact, the record discloses that the plaintiff made no objection with respect to § 137.05–10 until August 16, 1966, after the Coast Guard had put on its entire case against the plaintiff. Finally, defendant notes that the plaintiff has made absolutely no showing of prejudice.

The Fourth Circuit has stated in United States v. Heffner, 420 F.2d 809 at 811 (4th Cir. 1969) that "An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." See also Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States ex rel. Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969); United States v. Leahey, 434 F.2d 7 (1st Cir. 1970); Hollingsworth v. Balcom, 441 F.2d 419 (6th Cir. 1971); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). The proper interpretation of the rule of these cases is found in American Farm Lines v. Black Ball, 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed. 547 (1970), where Mr. Justice Douglas for the Court at 538–539, 90 S.

Ct. at 1292 differentiates between agency rules intended to confer important procedural benefits upon individuals and those rules " . . . intended primarily to facilitate the development of relevant information for the [agency's] use . . . ."

In his opinion in this case, the Commandant, referring to 46 C.F.R. § 137.-05–10, said:

"This *informational* regulation is *designed obviously to save time* on a preliminary looking into a complaint. When A has been heard to accuse B, it is not only reasonable but economical to let B dispute A's statement, if he will, *before decision* is made to charge B." (p. 4 Commandant's Decision, Appeal No. 1678) (Emphasis supplied).

The court agrees with the Commandant that § 137.05–10 was promulgated for the purpose of providing relevant information for the investigating officer's use in deciding whether or not to bring charges. It was not intended primarily to confer important procedural benefits upon individuals as was the case in United States v. Heffner, *supra,* and the other cited decisions. As in American Farm Lines v. Black Ball,

"there is [thus] no reason to exempt this case from the general principle that '[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party.'" (Citations omitted). 397 U.S. at 539, 90 S.Ct. at 1292.

At most, a failure to observe § 137.-05–10 deprived the plaintiff of an opportunity to deny the substance of the complaint against him before the investigating officer preferred charges. The charges filed by the Coast Guard constituted the reason for the application of due process rights. The complaint filed by the seaman did not actually initiate the suspension and revocation proceedings against the plaintiff. As set forth in 46 C.F.R. § 137.01–30, suspension and revocation proceedings are instituted by an investigating officer only after an investigation. Section 137.05–10 appears to be no more than a tool of the investigator which enables him to receive information from the person being investigated. The section may also have a side-effect of alerting the accused of the complaint against him so that he can begin to prepare his defense. Nevertheless, it is § 137.05–25 that requires timely service of charges on the accused so that he has time to prepare a defense, not § 137.05–10.

No substantial prejudice was shown by the plaintiff as a result of the assumed failure of the Coast Guard to comply with § 137.05–10. As noted, neither plaintiff nor his attorney objected with respect to this issue until the Coast Guard had put on its entire case before the hearing examiner. The mere fact that the charges were brought against the plaintiff when there was the possibility, however remote, that no charges would have been brought if plaintiff had been afforded the opportunity to tell his story before a decision had been made to bring the charges, does not constitute "substantial prejudice." The plaintiff appeared at the administrative hearings with counsel, cross-examined the witnesses who were presented against him, and presented evidence in his own behalf. His employment of his procedural rights was not prejudiced in any way by the failure, if indeed there was a failure, of the Coast Guard to comply with § 137.05–10.

II

On December 8, 1966, after the Coast Guard had put on its entire case, the first hearing examiner recused himself from the proceedings. The examiner, Martin Norris, found that plaintiff's attorney, Jack Steinman, had accepted an offer from Mr. Norris's brother to rep-

resent a business owned jointly by Mr. Norris and his brother. Mr. Norris felt that he should be disqualified and the Commandant approved his request pursuant to § 137.20–15. Plaintiff's objection to the new examiner's refusal to begin anew was dismissed by the Commandant. (See tr. 186–190, com. dec. 5–6).

Plaintiff argues that the new examiner could not adequately evaluate the testimony of the various witnesses without observing their demeanor. He contends that because credibility was an essential factor in this case, observation of the witnesses was necessary.

Defendant's reply is basically fourfold. First, the defendant claims that plaintiff's attorney caused the problem by accepting the offer made by Mr. Norris's brother.

Secondly, the defendant cites several Supreme Court cases which indicate that the hearing examiner's decision is no more than an initial or recommended decision, and that the agency itself is responsible for factfinding. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and F.C. C. v. Allentown Broadcasting, 349 U.S. 358, 75 S.Ct. 855, 99 L.Ed. 1147 (1955). As set forth in Greater Boston Television Corp. v. F.C.C., 143 U.S.App.D.C. 383, 444 F.2d 841, 853 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L. Ed.2d 701 (1971):

> " . . . in the last analysis it is the agency's function, not the Examiner's, to make the findings of fact and select the ultimate decision, and where there is substantial evidence supporting each result it is the agency's choice that governs."

See also 2 Davis Administrative Law Treatise § 11.18, pp. 111–117. In addition, the agency may do away with the hearing examiner's report altogether. NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938).

Thirdly, defendant cites several cases in which courts have upheld the substitution of hearing examiners where the original examiner retired or died after hearing testimony and the new examiner made the report after reading the record. See NLRB v. Stocker Mfg. Co., 185 F.2d 451 (3rd Cir. 1950); Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129, 131–132 (2d Cir. 1967), cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967); Consolidated Carriers v. United States, 321 F.Supp. 1098, 1100 (S.D.N. Y.1970), aff'd, 402 U.S. 901, 91 S.Ct. 1375, 28 L.Ed.2d 642 (1971), reh. denied, 402 U.S. 1013, 91 S.Ct. 2187, 29 L. Ed.2d 436 (1971); Lacomastic Corp. v. Parker, 54 F.Supp. 138 (D.Md.1944). Also see cases cited in 2 Davis § 11.18, pp. 114–116.

Finally, the defendant refers to 5 U. S.C. § 554(d) of the APA which provides that the examiner who presides at the reception of evidence shall make the recommended or initial report unless he becomes unavailable.

Consideration of this point must begin with the realization that due process does not require that a decider of facts in an administrative proceeding actually hear the witnesses or be provided a report on their credibility. Utica Mutual Ins. Co. v. Vincent, *supra*; NLRB v. Stocker Mfg. Co., *supra*; Gamble-Skogmo, Inc. v. Federal Trade Commission, 211 F.2d 106, 112, 113–114 (8th Cir. 1954); Lacomastic Corp. v. Parker, *supra*. The next inquiry must be whether the statute which governed the administrative proceedings compels a different result.

The process of adjudication which Van Teslaar was subjected to here is provided for by 46 U.S.C. § 239 which requires an opportunity for a hearing and a decision on the record. The Administrative Procedure Act (APA) is applicable to all adjudications ". . . required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554. It is clear, therefore, that the APA governed the administrative proceedings in issue here. O'Kon v. Roland, 247 F. Supp. 743 (S.D.N.Y.1965).

The APA requires that the examiner " . . . who presides at the reception of evidence . . . shall make the recommended decision or initial decision . . . *unless he becomes unavailable to the agency.*" 5 U.S.C. § 554(d) (Emphasis supplied).

■ Assuming without deciding that the action of the first examiner in disqualifying himself made him "unavailable" to the agency, there is still the question remaining of whether the first examiner's unavailability under the circumstances of this case qualified as an exception to the APA's general rule that the examiner who receives the evidence must make the initial decision. The leading case on the point is Gamble-Skogmo, Inc. v. Federal Trade Commission, 211 F.2d 106 (8th Cir. 1954). The court there held that § 5(c) of the APA (now codified as 5 U.S.C. § 554(d)) requires the examiner who has heard the evidence to make the initial decision or recommendation, and, in a case in which the demeanor and conduct of the witnesses might be important in determining their credibility for the purpose of resolving disputed issues of fact, that even the unavailability of the first examiner would not justify a substitute examiner in making the initial decision or recommendation without a *de novo* hearing. Subsequent cases in several circuits have implied that a substitution of an examiner for a deceased, retired or otherwise unavailable prior examiner would be improper under the APA without a *de novo* hearing in a situation in which credibility of the witnesses was an important factor in reaching a resolution of factual disputes. Appalachian Power Company v. Federal Power Commission, 328 F.2d 237, 240 (4th Cir. 1964), cert. denied 379 U.S. 829, 85 S.Ct. 59, 13 L.Ed.2d 38 (1964); Art National Manufacturers Distributing Co. v. F.T. C., 298 F.2d 476, 477 (2d Cir. 1962); see also S. Buchsbaum & Co. v. Federal Trade Commission, 153 F.2d 85 (7th Cir. 1946), judgm't vacated because error waived 328 U.S. 818, 66 S.Ct. 1016, 90 L.Ed. 1600 (1946); Consolidated

Carriers Corp. v. United States, 321 F. Supp. 1098, 1100 (S.D.N.Y.1970), aff'd 402 U.S. 901, 91 S.Ct. 1375, 28 L.Ed.2d 642 (1971), reh. denied 402 U.S. 1013, 91 S.Ct. 2187, 29 L.Ed.2d 436 (1971); Braswell Motor Freight Lines, Inc. v. United States, 271 F.Supp. 906, 909 (W.D.Texas 1967); Bd. of Pharmacy of District of Columbia v. Feldman, 108 U.S.App.D.C. 46, 279 F.2d 821 (1960), affirming 160 A.2d 100 (D.C.Mun.App. 1960). In most of the cases decided under the APA where the substitution for an unavailable examiner has been allowed without a *de novo* hearing, it has been because the demeanor or manner of the witnesses heard by the first examiner was not an important factor in determining credibility to resolve disputes of fact or because the parties had agreed to the substitution without objection. NLRB v. Dixie Shirt Co., 176 F.2d 969, 970 (4th Cir. 1949); Appalachian Power Company v. Federal Power Commission, *supra;* Art National Manufacturers Distributing Co. v. F. T. C., *supra;* Consolidated Carriers Corp. v. United States, *supra;* Braswell Motor Freight Lines, Inc. v. United States, *supra.* Only in NLRB v. Stocker Mfg. Co., 185 F.2d 451 (3rd Cir. 1950), is there a categorical statement that the APA allows substitution of examiners where one examiner has become unavailable, and in that case it is not clear whether credibility of witnesses was a factor. After considering all of the cases, this court is satisfied that the APA allows substitution of examiners without a *de novo* proceeding only where the original examiner is unavailable and either (1) the case is not one in which the resolution of conflicting testimony requires a determination of the credibility of the witnesses or (2) if it is a case in which credibility is involved, the parties agree to proceed without a *de novo* administrative proceeding. See also 2 Davis, Administrative Law Treatise, §§ 11.18–11.19.

■ The transcript, while ambiguous, compels a finding by this court that Van Teslaar did not agree to proceed without a *de novo* administrative hearing. His

attorney clearly objected to the substitute examiner merely reading the record of the testimony of the witnesses who had appeared before the prior examiner. (tr. 180–181; 190–191; 194). On January 20, 1967, after the substitute examiner had previously ruled that he would not rehear the witnesses whose testimony had been taken before the prior examiner, the proceedings were reconvened for the purpose of hearing Van Teslaar's side of the case. His attorney, according to the transcript, stated:

> "I would also like to make the record clear that in proceeding, as I will proceed, I am abiding by your decision announced at the last hearing with respect to the continuing on the point—from the point where the proceeding was when Mr. Norris withdrew, and that I am *now* waiving my objections to that procedure as previously stated." (tr. 198) (Emphasis supplied).

The anomaly of the waiver by Van Teslaar's attorney of a procedural point he had previously vigorously pressed, particularly when no such waiver was sought by either the substitute examiner or the Coast Guard prosecutor, can be explained very simply. The reporter apparently reversed the words "not" and "now." When the above quoted statement by Van Teslaar's attorney is read in that context, it is apparent that he was doing just the opposite of what the erroneous transcript would indicate in that he was not waiving his prior objection but was proceeding because his prior objection had been overruled. That this explanation is not fanciful is illustrated by the transcript just four pages further on when the reporter has Van Teslaar's attorney saying:

> "I will *not* put Mr. Van Teslaar on the stand, with your permission." (tr. 202) (Emphasis supplied).

Obviously, the word "not" here was erroneously substituted in the transcript for the word "now" since the examiner responded by saying "Yes, you may proceed, sir" and Mr. Van Teslaar immediately thereafter was sworn and commenced his testimony.

Two witnesses had testified in person before the original examiner on the merits of the charges against Van Teslaar. Albert Mele, the chief engineer with whom Van Teslaar had the altercation, and Pedro Perez, a deck maintenance man who supposedly observed the affair through a deck opening as it took place on the deck below him, both testified at length (tr. 15–78, 92–120). In at least some crucial aspects, their testimony differed from that of Van Teslaar in such a way as to create the necessity of the fact finder making a direct choice in personal credibility as between them. No showing was made or proffered that either Mele or Perez was no longer available to testify in person before the substitute examiner. Under these circumstances the APA required that the testimony of Mele, Perez and Van Teslaar be heard before the same examiner who would make the initial decision in the proceeding.

### III

The court has considered the contention of Van Teslaar that the venue of the hearing was improper and has concluded that the contention is without merit. See 5 U.S.C. § 554(b); 46 U.S.C. § 239; 46 C.F.R. § 137.05–15(a)(3).

### IV

In view of the fact that the defendant's final order must be set aside for the reasons set forth in Part II of this opinion, it is not necessary to decide whether the examiner improperly refused to issue certain subpoenas at Van Teslaar's request nor to decide whether lack of prejudice to Van Teslaar or failure on plaintiff's part to raise the issue before the Commandant would preclude relief to plaintiff on that ground in any event.

### V

Plaintiff's counsel is directed to prepare, after consultation with defendant's

counsel, an appropriate final order in accord with this opinion setting aside the defendant's final action in finding plaintiff guilty of having shoved and orally abused a superior officer and in suspending his licenses issued by the U.S. Coast Guard. 5 U.S.C. §§ 706(2)(A) and (D).