Robert L. **PIGRENET**, Sr., Petitioner,

v.

**BOLAND MARINE & MANUFACTURING COMPANY and the Director of the Office of Workers' Compensation Programs of the Department of Labor,** Respondents.

No. 79–1782.

United States Court of Appeals, Fifth Circuit.

Sept. 21, 1981.

Hatchett, Circuit Judge, filed dissenting opinion in which Politz, Tate and Thomas A. Clark, Circuit Judges, joined.

Tate, Circuit Judge, filed dissenting opinion in which Politz, Hatchett and Thomas A. Clark, Circuit Judges, joined.

Pitard, Pitard & Porobil, Michael L. Lash, New Orleans, La., for petitioner.

Stewart E. Niles, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Boland Marine, etc.

Carin A. Clauss, Sol. of Labor, Mary A. Sheehan, U. S. Dept. of Labor, Washington, D. C., for Director, O.W.C.P.

Before GODBOLD, Chief Judge, BROWN, AINSWORTH, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK and WILLIAMS, Circuit Judges.

PER CURIAM:

In this Longshoremen's and Harbor Worker's Compensation Act (LHWCA) case, a divided panel of this court held that an administrative law judge may not use transcribed testimony to pass on the credibility of a material witness. 631 F.2d 1190 (5th Cir. 1980). Because the logic of this holding could be said to apply to the making of credibility choices in a wide range of forums, we took this case en banc.

## I

In May, 1972, Boland Marine & Manufacturing Company ("Boland") hired Robert L. Pigrenet, petitioner herein. On Friday,

June 30, 1972, in the course of his employment for Boland in New Orleans, Louisiana, Pigrenet stumbled and fell on a catwalk aboard a ship. This fall apparently caused Pigrenet some immediate discomfort, although he worked throughout the day. Pigrenet reported to Boland for work the following Monday, but along with several other employees, he was laid off. He was never reemployed by Boland.

Pigrenet subsequently worked for Interstate Ranger Service where, on July 13, 1972, he twisted his back carrying a desk up a flight of stairs. On July 17, Pigrenet, complaining of back problems, was admitted to the Montelepre Hospital in New Orleans. Pigrenet told both the admitting physician and his treating orthopedic specialist that he had injured his back lifting a desk; he made no mention of the June 30 accident at Boland. Pigrenet was discharged from the hospital on July 23, but continued to be treated as an outpatient there for several months. In September, 1972, Pigrenet came under the care of Drs. Henry LaRocca and James Gosman of Touro Clinic, who treated him thereafter.

On February 24, 1973, Pigrenet was involved in an automobile accident. He retained the services of a law firm, Pitard, Pitard & Potobil, to make claims against Zurich Insurance Company, the insurer of the responsible driver. That firm has served as Pigrenet's counsel throughout the present LHWCA proceedings. Pitard, Pitard & Potobil, in prosecuting Pigrenet's claim against Zurich, contended that the automobile accident was the sole cause of Pigrenet's back problems; the accident had not aggravated any preexisting back injury. Part of counsel's proof in support of the claim was a letter from Dr. Mark C. Reith, who treated Pigrenet following the automobile accident. Dr. Reith's letter indicated that, as a result of the accident, Pigrenet suffered severe back pain and lost mobility in his lower back and hips. Dr. Reith noted that Pigrenet had not responded to conservative treatment and that Pigrenet's orthopedic specialist felt surgery was indicated. Zurich promptly settled the claim.

On May 11, 1973, Drs. LaRocca and Gosman performed the surgery, a lumbar laminectomy and spinal fusion. The surgery proved to be unsuccessful, however. Some time later, the Pitard law firm filed the present LHWCA claim against Boland, seeking to recover the medical expenses incurred in treating Pigrenet's back condition and compensation. Counsel alleged that all of Pigrenet's back problems were caused by his June 30, 1972 accident on the catwalk and sought a permanent, total disability rating.

Boland sharply contested the claim, contending that Pigrenet's back condition was not employment-related, but had been caused, instead, either by the July 13, 1972 desk-lifting incident at Interstate Ranger Service or the February 24, 1973 automobile accident. Boland also denied that Pigrenet was permanently and totally disabled.

The Benefits Review Board assigned the case to Administrative Law Judge William Sullivan for hearing. At the hearing, Pigrenet, his wife, a physician and a rehabilitative employment specialist testified. Pigrenet and Boland submitted into evidence various medical records and, by deposition, the testimony of several physicians and of the Zurich claims agent who had handled Pigrenet's personal injury claim. Based on this evidence, Judge Sullivan concluded that Pigrenet was permanently and totally disabled. The judge did not, however, resolve the threshold issue of whether Pigrenet's present back condition was causally related to the June 23, 1972 episode on the ship's catwalk. Although the record does not indicate why Judge Sullivan failed to resolve the causality issue, he apparently believed, albeit incorrectly, that the parties had stipulated to the job-relatedness of Pigrenet's injury.

Boland appealed Judge Sullivan's decision to the Benefits Review Board, arguing that he had failed to consider whether Pigrenet's disability was causally related to his June 30, 1972 fall and that the finding of permanent, total disability was not supported by substantial evidence. The Board concluded that the disability determination was sup-

ported by substantial evidence, but "that the administrative law judge erred by not considering the issue of causal relationship." The Board therefore remanded the case for resolution of that issue. The case was assigned to Administrative Law Judge George A. Fath, Judge Sullivan having died while Boland's appeal was under consideration.

On remand, Judge Fath moved directly to the causation issue. Both Pigrenet and Boland were given the opportunity to augment the record by presenting new evidence or recalling the witnesses. Neither party chose to present anything further, however, and Judge Fath proceeded to decide the matter on the basis of the already constituted record. Judge Fath found that Pigrenet had failed to prove the necessary causal relationship between his accident at Boland and his disability and therefore denied the claim. Pigrenet moved Judge Fath to reconsider the ruling; the motion was denied and Pigrenet appealed to the Benefits Review Board. He made several arguments to the Board: that the parties had stipulated as to the job-relatedness of his disability, removing that issue from the case; that Judge Sullivan had determined, even if *sub silentio*, that the disability *was* job-related; and finally, that Judge Fath's determination that the disability was not job-related was not supported by substantial evidence.

The Benefits Review Board disagreed with each of Pigrenet's arguments and affirmed. Pigrenet then took the appeal presently before us. In addition to the arguments he raised before the Board, Pigrenet now contends, for the first time, that it was inappropriate for Judge Fath to resolve the causation issue on the basis of the cold record prepared by Judge Sullivan. This is because the resolution of that issue turned on the credibility of witnesses, principally Pigrenet, whom Judge Fath did not observe. Thus, if we are unable to terminate this case by accepting one of the arguments he made before the Benefits Review Board, Pigrenet would have us remand the case for a new evidentiary hearing in which Pigrenet's credibility can be determined on

the basis of live testimony. A divided panel of this court agreed with Pigrenet and held that an administrative law judge may not make a credibility choice on a cold record when that choice is determinative of the outcome of the case. Because of the obviously far-reaching implications of this holding, we reconsider this case en banc.

## II

We turn first to the arguments Pigrenet raised before the Benefits Review Board. Pigrenet's first two arguments—that the parties had stipulated to the job-relatedness of his disability and that Judge Sullivan had, in any event, determined that Pigrenet's disability was job-related—can be dismissed perfunctorily, as they have no record support.

█ We must next consider whether Judge Fath's determination that Pigrenet's disability is not job-related is supported by substantial evidence. In approaching this question, we bear in mind that " '[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (*quoting Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). In applying this standard to the record before us, we conclude that Judge Fath's determination was supported by substantial evidence.

█ Pigrenet testified that his accidental fall while a Boland employee caused his disability. The record—and especially the medical evidence—however, does not corroborate his view. A claimant like Pigrenet may, of course, prove the job-relatedness of an injury in a LHWCA case without proffering expert medical testimony. *See Jarka Corp. of Philadelphia v. Norton*, 56 F.2d 287, 288 (E.D.Pa.1930). Here, proof of job-relatedness must rest on the credibility of Pigrenet's testimony alone.

Judge Fath found Pigrenet's testimony that his June 30, 1972 accident caused his disability to be without probative weight. The statements Pigrenet made to his treating physicians at Montelepre Hospital and to Dr. Reith following his automobile accident flatly contradicted Pigrenet's version of his medical history. Pigrenet responded to confrontation with these contradictory statements by denying that he had made them. Judge Fath, in his decision, noted that the physicians who recorded the statements had no reason to doubt the veracity of those statements, and he therefore concluded that Pigrenet's denials were "incredible." Judge Fath found for Boland because the claimant had failed to show a causal link between his job and his injury. The Benefits Review Board concluded that Judge Fath's decision was supported by substantial evidence; we agree. On this record, Judge Fath was entitled to treat Pigrenet as an untrustworthy witness, one who, as the Judge's decision strongly implies, fabricated his LHWCA claim.

■ We thus turn to Pigrenet's final argument that it was improper for the administrative law judge to make the critical credibility choice in this case on a cold record. We need not decide the validity of this argument, however. Pigrenet never attempted to present further evidence; nor did he object to the resubmission of the case on the extant record. Moreover, Pigrenet, in his petition to Judge Fath for reconsideration, and in his appeal to the Benefits Review Board, neglected to raise as error Judge Fath's resolution of the credibility and causation issues solely on the transcript of the previous hearing. Pigrenet has waited until now to make his point.

■ We have previously held that a party, in order to preserve the issue for appeal, must object at the fact-finding level to a substituted fact-finder's failure to conduct a new evidentiary hearing. *W. R. B. Corp. v. Geer*, 313 F.2d 750 (5th Cir. 1963), *cert. denied*, 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964). In *Geer*, a master was appointed to ascertain damages in a complex case. Before the master could finish his report he became ill and was replaced. The second master based his report on the record prepared by the first master. The district court adopted this report. On appeal, it was argued that the district court should have rejected the report because the master had not reheard the testimony. We held that this objection could not be raised for the first time on appeal, since the "trial Judge would have made appropriate provision for the appearance or reappearance of any critical witnesses for oral examination or reexamination before the successor Master had . . . the parties . . . informed [the court] that this was advisable or necessary." 313 F.2d at 752. The holding in *Geer* was recently approved by the Tenth Circuit in *Anaya v. Romero*, 627 F.2d 226 (10th Cir. 1980). *See also N.L.R.B. v. Dixie Shirt Co., Inc.*, 176 F.2d 969, 971 (4th Cir. 1949).

■ Pigrenet points us to other cases which, he contends, hold that when credibility is an issue, a substituted fact-finder must engage in a *de novo* hearing. *See Appalachian Power Co. v. Federal Power Commission*, 328 F.2d 237 (4th Cir.), *cert. denied*, 379 U.S. 829, 85 S.Ct. 59, 13 L.Ed.2d 38 (1964); *Art National Manufacturers Distributing Co. v. FTC*, 298 F.2d 476 (2d Cir.), *cert. denied*, 370 U.S. 939, 82 S.Ct. 1588, 8 L.Ed.2d 808 (1962); *Gamble-Skogmo, Inc. v. FTC*, 211 F.2d 106 (8th Cir. 1954). Not one of these cases, however, holds that a party may raise as error on appeal a fact-finder's decision not to hold such a hearing when the party fails to object to the procedure at the fact-finding level. In fact, in *Gamble-Skogmo, Inc. v. FTC*, 211 F.2d 106, 115 (8th Cir. 1954), which held that a substituted hearing examiner erred in refusing a party's request for a *de novo* hearing, the Eighth Circuit distinguished seemingly contrary cases by noting that in those cases the parties failed to request a *de novo* hearing. This is, of course, consistent with the general rule that " '[p]rocedural objections to the action of an administrative agency or trial court must be timely made to give the tribunal an opportunity to correct the error, if error there be.' " *Brotherhood of R. R. Trainmen v. Central of Georgia Ry. Co.*, 415

F.2d 403, 417 (5th Cir. 1969), *cert. denied*, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970), (*quoting Brotherhood of R. R. Trainmen v. Chicago, Milwaukee, St. Paul & Pacific R. R. Co.*, 380 F.2d 605, 608 (D.C.Cir. 1967)).

The decision of the Benefits Review Board is AFFIRMED.

HATCHETT, Circuit Judge, with whom POLITZ, TATE and THOMAS A. CLARK, Circuit Judges, join, dissenting.

It is difficult to disagree with the broad and general statements in the majority opinion. I dissent, however, for two reasons: (1) to clearly set out and preserve for future consideration the issue before the panel and the en banc court; and (2) to show that the peculiar circumstances of this case required the substituted finder of fact to order another evidentiary hearing before making credibility determinations.

The issue is: whether a substituted administrative law judge (ALJ) may, without conducting an evidentiary hearing, make crucial credibility findings antithetical to those of an initial ALJ, who heard the material witness's testimony, observed his demeanor, and found the testimony credible. In deciding this question, the panel majority stated:

> Normally, a proper credibility evaluation requires that the fact finder hear and observe the witness. Credibility is not readily discernable by one who merely reads a cold record.... [W]here the credibility of the witness is crucial to resolving a factual dispute, a substituted fact finder must engage in a de novo hearing of the evidence. Thus, we find in this instance that the failure by the substituted administrative law judge to conduct a de novo hearing of the evidence constitutes manifest injustice.

*Pigrenet v. Boland Mfg. Co.*, 631 F.2d 1190, 1191–92 (5th Cir. 1980), *vacated*, 636 F.2d 1107 (5th Cir. 1981).

The en banc court refuses to decide the question that was before the panel by finding that it is not properly presented because Pigrenet failed to request another evidentiary hearing when he had the opportunity to do so. By refusing to resolve this issue, the majority necessarily holds that a claimant always waives the right to a new evidentiary hearing before a substituted finder of fact unless a new hearing is requested.

Underlying this holding is the majority's apparent belief that a new evidentiary hearing is so fundamental to the truth finding process that where a new evidentiary hearing is requested, it must be granted. Yet, rather than have the truth finding process governed by a clear rule emanating from this court, the majority leaves a claimant's fate to the knowledge, tactics, or whim of either of the party's lawyers.

The initial ALJ conducted the hearing pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 554(d).* Section 554(d) provides that "[t]he employee who presides at the reception of evidence ... shall make the recommended decision ..., unless he becomes unavailable to the agency." The initial administrative law judge (ALJ) was unavailable at a second hearing to determine the job relatedness of Pigrenet's injury. The question therefore arises: Under what circumstances may a substituted ALJ "make the recommended decision"? Decisions from other circuits state the enlightened view on this question.

In *Gamble-Skogmo, Inc. v. Federal Trade Commission*, 211 F.2d 106 (8th Cir. 1954), a trial examiner who heard the testimony in a hearing to determine antitrust violations, became unavailable to the Federal Trade Commission (FTC) because he had reached the mandatory retirement age. The FTC thereafter appointed a substitute trial examiner to resolve the case on the basis of the cold record. The corporation involved in the proceeding objected to this procedure and requested that the FTC reappoint the initial trial examiner to the case for a period sufficient to allow him to issue his report. The FTC disagreed and an appeal

---

* 33 U.S.C. § 919 provides that any hearing held under the LHWCA "shall be conducted in accordance with the provisions of section 554 of Title 5."

was taken to the court of appeals. Recognizing that the hearing was required by the APA, the Eighth Circuit found that section 5(c) of the APA (now codified at 5 U.S.C. § 554(d)) required that "the recommended decision be made by the examiner who ... presided at the reception of evidence" except where such officer becomes unavailable to the agency. 211 F.2d at 106. Finding that the initial trial examiner's age had rendered him unavailable to the FTC, the court faced the question, under what circumstances a substituted fact finder could decide a case based on the cold record. In deciding the question, the Eighth Circuit found that the primary concern of section 5(c) in requiring the same officer who presides at the reception of evidence to make the recommended decision is "to make direct credibility evaluation by a trial examiner ... a progressive element or factor in the arriving at of intermediate administrative findings, conclusions, and decisions ...." 211 F.2d at 113. The court made this finding because direct credibility evaluation by a trial examiner tends to insure "fairness and readier acceptance of judicial or quasi-judicial decision." 211 F.2d at 113. Since "a credibility evaluation [could] ... be said ... to constitute a salient element in a sound arriving-at of the controlling facts by an examiner," the Eighth Circuit ordered a new hearing before the substituted finder of fact. 211 F.2d at 115.

In *New England Coalition v. Nuclear Regulatory Com'n.*, 582 F.2d 87 (1st Cir. 1978), the licensing board of the Nuclear Regulatory Commission (NRC) held extensive hearings before its chairperson left the NRC. A new chairperson continued the hearings. One of the intervenors in the licensing hearing urged the licensing board to order a new hearing on the ground that at least two issues depended on the credibility of witnesses. The NRC held that a new hearing was not required. The First Circuit affirmed. In affirming, the court stated that the question for decision was "whether the APA dictates what action an agency must take when the presiding employee becomes unavailable." 582 F.2d at 100. The court noted that the "APA ex-

presses a strong preference for having decisions made by someone who has heard the evidence presented." 582 F.2d at 100 (citing *Gamble-Skogmo,* 211 F.2d at 114). The court also stated that the legislative history accords special consequences to the initial ALJ's opinion "to the extent that material facts in any case depend on the determination of credibility of witnesses as shown by their demeanor or conduct at the hearing." 582 F.2d 100 (quoting *Gamble-Skogmo,* 211 F.2d at 115). It recognized that *Gamble-Skogmo* required a de novo hearing before the substituted fact finder unless "it fairly could be said that a credibility evaluation from hearing and seeing the witnesses testify was unnecessary." 582 F.2d at 100. The court thereafter found that although credibility of the conflicting experts played a central role in the licensing decision, the credibility was "a function of logical analysis, credentials, data base, and other factors readily discernable to one who reads the record." 582 F.2d at 100. Consequently, a new hearing was not required.

In *Van Teslaar v. Bender,* 365 F.Supp. 1007 (D.Md.1973), the district court faced the question whether section 554(d) of the Administrative Procedure Act required a substitute administrative law judge to conduct a new hearing prior to rendering his decision. The first hearing examiner recused himself during the proceedings and a new examiner replaced him over the objection of the plaintiff. After examining the cases construing section 554(d), the district court stated:

> The APA allows substitution of examiners without a de novo proceeding only where the original examiner is unavailable and either (1) the case is not one of which the resolution of conflicting testimony requires a determination of the credibility of the witnesses or (2) if it is a case in which credibility is involved, the parties agreed to proceed without a de novo administrative proceeding.

365 F.Supp. 1012. Assuming that the original fact finder was unavailable and finding that the case involved issues that could be decided only by resolving the conflicting

testimony of witnesses, the district court ordered a new hearing.

The commentators are in full agreement with the cases cited above. Professor Davis, in his *Administrative Law Treatise* states:

> When demeanor of witnesses is a substantial element, deciding without taking that factor into account is undesirable and may be unfair, but when demeanor is unimportant, no unfairness results from substituting one hearing officer for another at any stage of the proceeding, and no unfairness results if the agency makes a decision on the record without a report from the hearing officer. The key consideration is to prevent the demeanor of witnesses, whenever it may be a substantial element, from getting lost from the case.

2 Davis, *Administrative Law Treatise,* § 11.18 at 113 (1st Ed. 1958).

The majority would agree that a resolution of the issue whether a relationship existed between Pigrenet's injury and his job at Boland required a determination crediting or discrediting Pigrenet's testimony. The cases uniformly hold that a substituted finder of fact must conduct a de novo hearing when, as here, credibility evaluation constitutes a "salient element in the sound arriving-at of the controlling facts by an examiner." *Gamble-Skogmo,* 211 F.2d at 115. Such a rule will "insure fairness and readier acceptance of . . . quasi judicial decision[s]." 211 F.2d at 113.

While the majority agrees with this rule, they hold that a claimant must object in the administrative forum in order to preserve this point on appeal. As support for their position they would point to the fact that in *Gamble-Skogmo, New England Coalition,* and *Van Teslaar,* the litigants objected in the administrative forum to the procedure which allowed the substituted fact finder to continue the proceedings without beginning anew. In addition, the *Van Teslaar* court expressly indicated that parties may agree to proceed without a de novo hearing even where credibility of a witness is inextricably tied to an ALJ's factual findings.

While acknowledging the apparent support for the majority's holding, I believe the circumstances of this case belie a rule granting any party the right to waive a new hearing. In this case, the initial ALJ issued his findings of fact crediting Pigrenet's testimony, after a hearing in which he observed Pigrenet's demeanor. The opportunity therefore arose for the second ALJ to reverse the credibility findings of the initial ALJ. In *Gamble-Skogmo, New England Coalition, Van Teslaar,* and *Greer* (cited by the majority), by contrast, the substituted ALJ was either appointed to replace the initial ALJ before or after the hearing was concluded but never after the initial ALJ issued his findings of fact. Thus, in those cases, no opportunity existed for the substituted ALJ to reverse the credibility findings of the initial ALJ.

In these circumstances, there should be a heightened concern that the party prevailing in the first administrative hearing receives a fair hearing in subsequent proceedings concerning the same issues and the same agency. This concern can not be satisfied by permitting the substituted ALJ to resolve credibility issues antithetical to the resolution of those issues by the initial ALJ on the basis of the cold record. If such is permitted, administrative litigants will become frustrated with and lose faith in a system that allows ALJs to reverse each other's credibility findings solely on the basis of the cold record. Hearing and observing principal witnesses, where credibility choices are to be made, are either important or not important. To give the choice to the lawyers in the case invites abuse.

The majority can find no solace in *Gamble-Skogmo, New England Coalition, Van Teslaar,* and *Greer.* Although those cases are important to display the compelling considerations underlying the necessity of de novo hearings when credibility evaluations are crucial to factual findings, in neither case did the court consider whether a substituted ALJ could reverse the credibility findings of the initial ALJ without conducting a new hearing.

In this situation, a new hearing should be held whether or not a party requests it. Such a rule would give the proper deference to the initial ALJ's findings and would assure fairness to all parties who zealously litigate their claims before the initial ALJ.

It is difficult to imagine why a new evidentiary hearing when a fact-finder is substituted appears to the majority to be of "far reaching implication" unless determining disputed facts on crucial issues by listening to the testimony of witnesses has "far reaching implications."

TATE, Circuit Judge, with whom POLITZ, HATCHETT and THOMAS A. CLARK, Circuit Judges, join, dissenting.

I respectfully dissent. In my opinion, the en banc opinion ignores the issue of a very real deficiency in the fact-finding process, which under the exceptional circumstances of this case requires a remand for further evidence in order to assure against a miscarriage of justice, as the panel opinion held. 631 F.2d 1190.

En banc rehearing was granted, primarily because of fears expressed by the dissent that the majority's rationale precluded credibility evaluation by the trier of fact based solely on transcribed evidence, without actually hearing and seeing the witness. 631 F.2d at 1192. In similarly misconstruing the actual issue decided by the panel majority, the en banc opinion mechanically applies theories of judicial review and overlooks without mention the very real concern of the panel majority that in the exceptional situation before us a miscarriage of justice may have resulted from mechanical application of usual principles of judicial review of an administrative agency's determinations.

I realize that an en banc rehearing is granted primarily to resolve important issues of law, not to rectify individual injustices. Nevertheless, once the appeal is before the en banc court, we should not in the performance of our institutional (quasi-legislative) function overlook that, at bottom, we are sitting to adjudicate the particular claims of particular persons, and that *that*

—rather than any law-making function—is the basic reason the appeal is before us for decision.

In essence, the judicial function is directed at resolving the rights and liabilities of specific persons in the concrete factual situation before the court. In accomplishing this purpose, it is true, an appellate court has the additional law-clarifying function of enunciating abstract principles as guides for future litigation. Here, however, while there is little with which I disagree in the abstract propositions enunciated by the en banc majority, its opinion glosses over the truly exceptional circumstances of this case that indicate—as it did to the panel majority in its sensitive concern arising out of the present exceptional circumstances—that a remand rather routine affirmance on abstract principles is required in order to avoid a miscarriage of justice.

To capsule the present facts, with slightly different emphasis than that of the majority:

The employee Pigrenet is undoubtedly disabled by a painful back (disc) condition resulting from trauma. The significant issue before the Administrative Law Judge (Sullivan) who conducted the initial hearing was the same as that before the second ALJ (Fath), the Board on both occasions, and now before us: Did this disabling back injury result from a stumbling accident at work for the respondent Boland on June 23–30, 1972, or was it instead the result either of a non-Boland-employment injury resulting from desk-lifting on July 13, 1972, or of an automobile accident on February 24, 1973?

At the hearing before Judge Sullivan, the first ALJ, only Pigrenet, his wife, a physician, and an employment specialist testified. In attempting to prove a non-employment cause of the disability, Boland produced no sworn evidence, nor does its examination or cross-examination of the five physicians who testified (four by deposition) at any point develop its theory that some subsequent incident (not the Boland work injury) was the cause of the claimant's disability.

Instead, for *that* defense [1] Boland relies exclusively upon documentary evidence in the form of notations on hospital records or on doctor's office histories, on allegations in a tort lawsuit by Pigrenet arising out of his automobile accident, or on contentions of disability found in the automobile insurer's claims file. These exhibits would undoubtedly furnish substantial reason to question Pigrenet's credibility—and had the first ALJ Sullivan done so (as did the second ALJ Fath), there is little question but his denial of compensation based upon this credibility evaluation would have been upheld.

However, on the contrary, Judge Sullivan accepted the plaintiff's sworn testimony taken before him—denying or explaining these notations on medical charts and claim-file records—and found Pigrenet to be a truthful witness. *He is the only trial judge who saw and heard this witness.*

On the administrative appeal from Judge Sullivan's award of compensation, the Board noted the absence of specific findings as to a causal relationship between the disability and the June 30, 1972 work-accident, and it remanded the case to the ALJ for the determination of causal relationship. BRF No. 77–347 (March 28, 1978); 8 BRBS 53 (1978). In the meantime, Judge Sullivan had died, and on remand the case was assigned to a second administrative law judge (Judge Fath).

Judge Fath did give the parties an opportunity to submit further evidence, it is true. Pigrenet's counsel, it seems to me, sensibly chose to rest on the first hearing—the hearing officer there, who had seen and heard Pigrenet, accepted his testimony as credible over very strong (but purely documentary and unsworn notations in records) that might indicate the post-accident desk-lifting accident or some other incident was the cause of the injury.[2] It seems remarkable to me—if indeed the subsequent automobile accident (specifically discounted by Judge Sullivan) or the subsequent desk-lifting incident *did* have superseding causal relationship to the present disability—that Boland did not take advantage of the opportunity so to prove by evidence instead of by relying upon insinuations and upon unsworn notations on medical records or in claims files.[3]

Based on the identical record made before Judge Sullivan (which included live testimony by Pigrenet, accepted by the judge, which denied the adverse causative information reflected by unsworn medical records), Judge Fath—who did not have the opportunity to hear Pigrenet personally in order to evaluate his credibility—determined that the injury resulted from the desk-lifting accident and was further aggravated by a tire-lifting and the automobile accident. As the Board noted, "Judge Fath [who never saw the claimant] found that claimant was not a credible witness due to the [documentary] inconsistencies in the record." The Board then concluded that, under *usual* principles of administrative review, Judge Fath's "finding, if supported by substantial evidence, *must* be affirmed."

But this is not a usual situation of administrative review of evidentiary findings by a hearing officer. Of course, had Judge Fath been the initial hearing officer, whether or not he heard the claimant in person, the Board's action would undoubtedly be correct. Here, however, an exceptional situa-

---

1. The primary thrust of Boland's medical-witness examination and cross-examination was to suggest that Pigrenet was at most partially disabled and that, in any event, the cause of the disability was a degenerative (i.e., a non-traumatic) condition.

2. I need not emphasize here that the type of injury, a disc involvement, may initially not be suggestive of its disabling capacity and not infrequently in the early stages is ascribed to subsequent aggravating incidents.

3. We probably cannot take judicial notice that such notations are often made by clerical act and primarily developed for billing purposes; but we certainly cannot say that Judge Sullivan was clearly in error in accepting the claimant's sworn testimony before him in preference to such documentary evidence, unsworn and unauthenticated as to factual accuracy (in fact, denied as to factual accuracy by the only sworn evidence in the record).

tion is presented—the only ALJ who actually heard and saw the claimant evaluated his denials as credible, in the face of the same *documentary* inconsistencies upon which the second ALJ (who did *not* hear the claimant) based his finding of non-credibility. It is mere rote, not sensitive and functional judging, to say that under such circumstances we are blind to the obvious discrepancy in credibility evaluation made from identical evidence by one ALJ on mere deductions from paper, and by the other on face-to-face seeing and hearing a live witness—the latter circumstance (personal evaluation of demeanor, etc.), of course, being an underlying functional reason for affording such great weight on review to a factual determination of credibility by a trier of fact.

Under these circumstances, a remand for a further evidentiary hearing on the issue of causal relationship should be ordered. Despite the lack of request by the claimant, the second ALJ, it seems to me, abused his discretion by failing to conduct a further evidentiary hearing, once he determined that his purely theoretical adverse evaluation of the claimant's credibility differed from that of the first ALJ, who had actually seen and heard the claimant and who had accepted his testimony as credible. Likewise, the Board itself in holding that it *"must"* affirm the second ALJ's credibility determination, was in error in doing so (rather than remanding) where there is clear reason to question the determination's basis—i.e., in the exceptional reason arising from the first ALJ's evaluation contrary to the second ALJ's which (unlike the second ALJ's) was based on personal hearing and observation of the claimant. Under these circumstances, the failure of the claimant to request the taking of further evidence should not preclude our doing so in the interest of justice. As the original panel opinion stated, citing authority, "[q]uestions not presented to or passed on by the fact finder may be considered on appeal under exceptional circumstances where a miscarriage of justice would otherwise result." 631 F.2d at 1191.

Accordingly, I respectfully dissent, and I would reinstate the remand ordered by our original panel opinion.